OPINION OF THE COURT
Elliott Wilk, J.
Although the goods consigned to plaintiff were lemons to begin with, they are worthless now. Plaintiff has sued defendant rail carrier, claiming that the fruit was damaged en route to New York City.
Plaintiff moves to dismiss defendant’s twelfth affirmative defense. Defendant cross-moves for summary judgment pursuant to that same defense. The motions raise novel issues concerning the application of the Staggers Rail Act of 1980 (94 US Stat 1895 [Staggers]).
THE FACTS
On November 14,1980, Yuma Citrus Co., a subsidiary of Sunkist Growers, Inc. (Sunkist), shipped a carload of lemons by railroad from Yuma, Arizona, to New York City. Plaintiff was the consignee of the shipper. The place of *1091 origin carrier was the Southern Pacific Transportation Company (SPT). The carrier at the place of delivery was defendant Consolidated Rail Corporation (Conrail).
Plaintiff alleges that the merchandise was in good condition when delivered to SPT in Yuma, but was damaged when delivered by Conrail in New York.
The goods were shipped pursuant to the terms of a “trip slip”, dated November 14, 1980, which incorporated by reference a master transportation agreement between Sunkist and SPT dated June 24,1980.[1] For purposes of this motion, it is assumed that Conrail may assert the same defenses that would have been available to SPT under the terms of the “trip slip”.
Paragraph 10(B) of the master agreement sets forth certain conditions for recovering damages under the contract. It states that the shipper or consignee must file a claim with either the place of origin or destination carrier, but not both carriers, within six months of delivery, and must sue the carrier with which the claim has been filed within one year.[2]
On January 5, 1981, plaintiff filed a claim with SPT. In August, 1981, plaintiff sued Conrail, with whom it had not filed a claim.
Defendant’s twelfth affirmative defense asserts that this suit is barred by paragraph 10(B) of the master agreement *1092 because it was not instituted against the carrier receiving the claim.
Plaintiff contends that paragraph 10(B) is unenforceable under the Interstate Commerce Act (US Code, tit 49, §§ 10505, 11707 [ICA]).[3]
THE LAW
Frequently, several carriers are responsible for the rail shipment of merchandise from the point of departure to the point of destination. Prior to 1906, rail carriers were permitted to limit potential liability for loss or damage to merchandise by requiring shippers to file a claim with a carrier having custody of the merchandise as a condition precedent to the institution of a lawsuit against that carrier. In such event, before a lawsuit for damages could be brought, it was incumbent upon the shipper to determine which carrier was responsible for the loss and to file a claim with that carrier.
In 1906, Congress passed an amendment to the ICA commonly known as the Carmack Amendment (Car-mack).[4] The purpose of Carmack “was to relieve shippers of the difficult, and often impossible, task, of determining on which of the several connecting lines the damage occurred.” (Missouri, Kansas & Texas Ry. Co. v Ward, 244 US 383, 387.)
One effect of Carmack was to render unenforceable, contractual provisions seeking to limit the carriers subject *1093 to suit to those with which a claim had been filed. (Missouri, Kansas & Texas Ry. Co. v Ward, supra; Northern Pacific Ry. Co. v Wall, 241 US 87; Hayashida Farms v Baker, 16 Ill App 3d 514.)
In 1976, Congress passed the Railroad Revitalization and Regulatory Reform Act. (90 US Stat 31.) This act authorized the Interstate Commerce Commission (ICC) to promulgate certain exemptions from the ICA. Pursuant to that authority, the ICC, in Ex Parte 346 (Sub-No. 1) (361 ICC 211), exempted rail transportation of fresh fruits and vegetables from regulation under the ICA.
It was apparently under this exemption that SPT (and through SPT, the defendant Conrail) sought to limit its liability in the master agreement.
However, the ICA was amended again effective October 1, 1980 by Staggers.[5]
Staggers obligates rail carriers again to provide contractual terms consistent with the requirements of Carmack, but permits them to offer alternative terms. (House Conference Report No. 96-1430, US Code Cong & Admin News, 1980, vol 4, pp 4136-4137.)
SPT alleges that since October 1,1980, the effective date of Staggers, it “has been willing to provide to any and all shippers liability terms and conditions on the shipment of fresh fruit and vegetables consistent with [Carmack]”.[6] It concedes that such terms were never offered and suggests that plaintiff and its consignor had the burden of requesting them. Indeed, even after such terms were requested by Sunkist in a letter dated January 21, 1980, SPT replied that terms consistent with Carmack would be prohibitively *1094 expensive.[7] SPT suggested that Sunkist reconsider its request and, apparently, never offered such terms prior to December 27, 1982.
Defendant misunderstands the nature of its option to offer “alternative terms”. SPT’s reply to Sunkist’s letter of January 21, 1981 refers to an alternative contract providing “full Carmack liability.” The “alternative terms” provision in Staggers, however, clearly refers to those not consistent with the provisions of Carmack. The carrier’s unalterable obligation under Staggers is to provide terms consistent with Carmack. The option under the second sentence of title 49 (§ 10505, subd [e]) of the United States Code (Staggers), permits the carrier to offer other terms as alternatives to those consistent with Carmack. This was not done.
The only terms offered to plaintiff’s consignor were those defined as “alternative terms” by Staggers. The failure to offer terms consistent with Carmack made the terms of the “trip slip” an alternative to nothing.
Defendant’s contention that SPT was willing to provide terms consistent with Carmack is irrelevant. The statute imposes upon carriers something more than a passive, uncommunicated willingness to provide full liability terms consistent with Carmack; it mandates that the carrier actually provide those terms.
The word “provide” implies some form of interaction with the other party. (See Woods v Benson Hotel Corp., 75 F Supp 743, 748; see, also, Webster’s Third International Dictionary [equating “provide” with “supply”, and “furnish”].) A carrier may not “provide” terms simply by thinking about them.
The obligation to “provide” full liability terms requires at least that the carrier inform the shipper of their availability. If the carrier then wishes to offer alternative terms, the parties are free, under the statute, to agree on more restricted liability.
*1095 CONCLUSION
Because SPT failed to comply with Staggers, paragraph 10(B) of the master agreement, to the extent that it seeks to limit the carrier’s liability, is unenforceable.
Accordingly, plaintiff’s motion to dismiss the twelfth affirmative defense, which asserts that plaintiff’s suit is barred by paragraph 10(B) of the master agreement, must be granted. Defendant’s cross motion for summary judgment based on its twelfth affirmative defense is denied.

. The “trip slip” mistakenly dates the master transportation agreement as Nov. 14, 1980.

. The full text of paragraph 10(B) is as follows: “As a condition precedent to recovery for damages hereunder, a claim must be filed by Shipper (or alternatively by consignee), in writing and properly supported, with and received by either the origin or destination Carrier named in the trip slip, but not both Carriers, within six months after delivery of the Commodities, or in case of failure to make delivery, then within six months after a reasonable time for delivery has elapsed. A notice of intent to file a claim, a notice of protest, or a claim without proper support shall not satisfy this requirement. The Carrier receiving the claim shall pay, decline or offer to compromise it within six months of receipt. Any suit to recover upon such claim shall be instituted against the Carrier receiving the claim within one year from the day when notice in writing is given by the Carrier to the claimant that the Carrier offers to compromise or disallows the written claim or any part of [sic] parts thereof specified in the notice. Where such claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, no Carrier shall be liable and the claim and the suit will be barred and no payment will be made thereon.”

. In its motion papers, defendant argues that the Staggers Rail Act, effective Oct. 1980, cannot invalidate a provision of the master agreement dated June, 1980. (See US Code, tit 49, § 10713, subd |j].) However, the contract at issue here is the trip slip dated November 14, 1980. The provisions of the master agreement are merely incorporated by reference.

. This law and its subsequent amendments are presently codified at section 11707 of title 49 of the United States Code which provides, in relevant part, as follows: ■
“(a) (1) A common carrier * * * shall issue a receipt or bill of lading for property it receives for transportation * * * That carrier and any other common carrier that delivers the property *** are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier over whose line or route the property is transported * * *
“(c) (1) A common carrier may not limit or be exempt from liability imposed under subsection (a) except as provided in this subsection. A limitation of liability * * * in a receipt, bill of lading, contract, rule, or tariff *** in violation of this section is void.”

. The portion of Staggers relevant to this proceeding is codified at title 49 (§ 10505, subd [e]) of the United States Code. It provides, in part, as follows: “No exemption order issued pursuant to this section shall operate to relieve any rail carrier from an obligation to provide contractual terms for liability and claims which are consistent with the provisions of section 11707 of this title. Nothing in this subsection or section 11707 of this title shall prevent rail carriers from offering alternative terms nor give the Commission the authority to require any specific level of rates or services based upon the provisions of section 11707 of this title.”

. Affidavit of R.A. Brown, Dec. 31, 1982.

. SPT letter of Jan. 28, 1981.