**CONSOLIDATED RAIL CORPORATION, Plaintiff,**

v.

**Ted SOBIECH d/b/a Ted Sobiech Farms, Defendant.**

**No. 84 Civ. 5208(DNE).**

United States District Court, S.D. New York.

April 25, 1989.

Michael J. Siris, New York City, for plaintiff.

Michael R. Gottlieb, Middletown, N.Y., for defendant.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

Plaintiff, Consolidated Rail Corporation ("Conrail"), in this action seeks payment of freight charges for 26 shipments of onions. Defendant Ted Sobiech ("Sobiech"), the consignee of the shipments, has counterclaimed for damage or loss with respect to certain shipments. Plaintiff seeks an order pursuant to Rule 56 of the Federal Rules of Civil Procedure granting (1) partial summa-

ry judgment with respect to certain counterclaims on the ground that they are barred as a matter of law under the pertinent contracts of carriage; and (2) summary judgment on the plaintiff's direct claims. For the reasons stated below the motions are denied.

A. *Standards for Summary Judgment*

On a motion for summary judgment the court must view the facts in the light most favorable to the non-moving party. In order for the court to grant summary judgment, the moving party must demonstrate that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1972); Fed.R.Civ.P. 56(c). Accordingly, for purposes of this motion the court must treat all of plaintiff's allegations as true. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut*, 829 F.2d 317, 319 (2d Cir.1987).

B. *Sobiech's Counterclaims*

Seventeen of the shipments in question originated on the Southern Pacific Transportation Company ("SPT") and nine shipments on the Atchison, Topeka & Santa Fe Railway ("ATSF"). Conrail was the delivering rail carrier for all of the shipments. The plaintiff contends that the SPT shipments were governed SPT's Master Transportation Agreement ("SPT Agreement") and the ATSF shipments were governed by the ATSF's Uniform Contract for Transportation of Exempt Agricultural Commodities ("ATSF Contract"). The plaintiff has not submitted any signed copies of these agreements or "trip slips" that would incorporate the terms of those agreements. Nevertheless, for purposes of this motion, the court assumes these transportation agreements to be applicable.

The defendant's counterclaim involves 14 shipments from California and Arizona to Warwick, New York. SPT was the origin carrier for certain shipments and ATSF for the remainder. Conrail was the delivering carrier for all the shipments. The crux of the dispute involves the conditions precedent to recovery under the carriage agreements. Both the SPT agreement and the ATSF contract provide for stringent time limits for filing of claims and the institution of lawsuits. The ATSF contract also contains a restrictive venue provision that requires suit to be brought either in Arizona or California. There is no dispute that Sobiech did not satisfy these contractual conditions. The issue then is whether these conditions should apply in this case.

It is common for several carriers to be responsible for the shipment of merchandise by rail. Prior to statutory regulation, a shipper seeking compensation for lost or damaged goods was required to file a claim with the carrier that had custody of damaged merchandise. In 1906, the Carmack Amendment ("Carmack"), 49 U.S.C. § 11707, to the Interstate Commerce Act ("ICA") was enacted. Carmack was intended "to relieve shippers of the difficult, and often impossible, task of determining on which of the several connecting lines the damage occurred." *Missouri, Kansas & Texas Railway Co. v. Ward*, 244 U.S. 383, 387, 37 S.Ct. 617, 619, 61 L.Ed. 1213 (1917). Carmack provides certain minimum terms below which a carrier could not limit liability.

In 1976, Congress by the Railroad Revitalization and Regulatory Reform Act ("1976 Amendment"), Pub.L. No. 94–210, 90 Stat. 31, authorized the Interstate Commerce Commission ("ICC") to provide exemptions from Carmack to certain categories of shipments. In 1979, the ICC exempted the transportation by rail of fresh fruits and vegetables from the strictures of the ICA. *See Ex Parte (Sub No. 1)*, 361 ICC 211 (1979). In 1980, Congress again amended the ICA by the Staggers Amendment ("Staggers"). 49 U.S.C. § 10505(e)

Conrail asserts that after December 27, 1982 SPT "offered shippers the choice between selecting the liability provisions of the Master Agreement and those contained [in Carmack]." Affidavit of John W. D'Orlando, Manager of Freight Claim Litigation for Conrail at 4. Conrail contends that ATSF also offered a similar choice to Sobiech by letter dated August 5, 1981. Affidavit of Charles Gies, Assistant Manager— Perishable Traffic Development Depart-

ment of ATSF at 2. Based on these assertions, Conrail contends that Staggers was satisfied, Carmack is inapplicable, and therefore, the contractual limitations of liability apply.

The difficulty with Conrail's position is that it assumes an incorrect interpretation of Staggers which provides:

No exemption order issued pursuant to this section shall operate to relieve any rail carrier from an obligation to provide contractual terms for liability and claims which are consistent with the provisions of section 11707 of this title. Nothing in this subsection or section 11707 of this title shall prevent rail carriers from offering alternative terms nor give the Commission the authority to require any specific level of rates or services based upon the provisions of section 11707 of this title.

49 U.S.C. § 10505(e).

■ Section 10505(e) requires carriers to provide terms consistent with Carmack in the first instance. They may offer terms alternative to Carmack, which may be accepted or rejected by the shipper. But in any event, unless the shipper affirmatively elects the alternative limited liability terms, the Carmack terms should apply. *See Quasar Co. v. Atchison, Topeka and Santa Fe Railway Co.*, 632 F.Supp. 1106, 1112–13 (N.D.Ill.1986); *Co-operative Shippers, Inc. v. Atchison, Topeka and Santa Fe Railway Co.*, 613 F.Supp. 788, 794 (N.D.Ill. 1985); *Fruitco Corp. v. Consolidated Rail Corp.*, 118 Misc.2d 1090, 462 N.Y.S.2d 754, 757 (N.Y. City Civ.Ct.1983); *but see Yamazen U.S.A. Inc., v. Chicago & Northwest Transportation Co.*, 790 F.2d 621, 623 (7th Cir.1986).[1] Even accepting the Gies Affidavit, ATSF did precisely the opposite of what Staggers requires. According to the arrangement described by Gies, a shipper was bound by the limited liability terms unless he chose the Carmack terms. Staggers requires that the non-Carmack terms be the alternative; ATSF provided the Carmack terms as an alternative. With respect to SPT, no particulars are given as to how the alternatives were presented. Nevertheless, none of the documentary evidence shows that the limited liability terms were an alternative. On the contrary, there is every indication that the Carmack terms were in fact the "alternative" offered by SPT. The ambiguous wording of the D'Orlando Affidavit further supports this conclusion.[2] It is not clear, therefore, that the terms of the carriage agreements are applicable in this case, and, at least in the case of the ATSF shipments, there is every reason to conclude that the terms limiting liability are unenforceable under ICA.

■ Even if this court were to decide that offering Carmack terms as an alternative to restricted liability terms, Conrail has failed to demonstrate that it is entitled to summary judgment as to the SPT shipments. The only "evidence" on the issue is D'Orlando's assertion by affidavit that the option was offered to shippers after December 27, 1982. This assertion is not sufficient to find that there is no triable issue of material fact as to whether the shipper was in fact given that option in this particular instance. Accordingly, summary judgment could not be granted even under an alternative reading of Staggers.[3]

1. In *Yamazen* the Seventh Circuit held that a contract that by its terms allowed a shipper to choose either Carmack liability terms or alternative terms was enforceable. The facts are slightly different because the contracts at issue in the instant case do not include Carmack terms within the contract. Moreover, there is no evidence as to how SPT provided the shipper the "option" of Carmack terms. In any event, to the extent *Yamazen* provides that a carrier satisfies Staggers by offering Carmack terms as an alternative to non-Carmack terms that will apply absent an election by the shipper, this court declines to follow its reasoning.

2. The D'Orlando Affidavit states on page four in a footnote: "Beginning on December 27, 1982, the SP[T] offered shippers the choice between selecting the liability provisions of the Master Agreement and those contained in 49 U.S.C. § 11707 (the 'Carmack Amendment') and the regulations promulgated thereunder." The language does not suggest that shippers would receive the Carmack terms unless they affirmatively chose the restrictive liability provisions.

3. Accordingly, even if the court were to have adopted the reasoning of the *Yamazen* court, plaintiff's motion for partial summary judgment would still be denied.

Accordingly, Conrail has failed to demonstrate that Sobiech's counterclaims should be dismissed as a matter of law and its motion for partial summary judgment is denied.

### C. *Conrail's Direct Claim for Freight Charges*

Conrail seeks payment for 26 shipments to Sobiech, three of which are part of the defendant's counterclaim. Sobiech was the consignee for each of these "collect" shipments of onions. Conrail contends that Sobiech is liable for $118,011.72 in freight and other charges. Sobiech does not deny being the consignee on 22 shipments of onions but does dispute the amount due. Sobiech contends that certain freight bills are not due because those shipments were rejected. Sobiech also contends other bills were improperly charged to him. Moreover, Sobiech contends that he is entitled to setoff any amounts due to him as a result of his counterclaims.

Although there seems little dispute that Sobiech is indebted to Conrail, the amount is in dispute. Summary judgment should be sparingly used and, in any event, requires a finding that no material issues of triable fact exist. In this case, the issue of the amount due to Conrail is material and is very much in dispute. Accordingly, Conrail's motion for summary judgment on its direct claims is denied.

### CONCLUSION

For the foregoing reasons, plaintiff's motions for summary judgment on its direct claim and partial summary judgment on defendant's counterclaim are denied.

SO ORDERED.