**C.R. ENGLAND AND SONS, INC., Plaintiff,**

v.

**The ATCHISON, TOPEKA AND SANTA FE RAILWAY CO., Defendant.**

**Civil No. 3:95–CV–3199–H.**

United States District Court, N.D. Texas, Dallas Division.

April 24, 1996.

758

Michael S. Scudder, Strasburger & Price, Dallas, TX, for Plaintiff.

Michael B. Hughes and Joseph Blizzard, McLeod, Alexander Powell & Apffel, Galveston, TX, for Defendant.

## *ORDER*

SANDERS, District Judge.

Before the Court are Defendant's Motion for Summary Judgment, filed March 11, 1996; Plaintiff's Response, filed March 26, 1996; and Defendant's Reply, filed April 15, 1996. Also before the Court is Plaintiff's Objections to the Affidavit of A.D. Powell ("Powell").[1]

## I. BACKGROUND

The material facts in this case are not in dispute. On May 19, 1994, Plaintiff C.R. England and Sons, Inc. ("England and Sons") and Defendant The Atchison, Topeka and Santa Fe Railway ("ATSF") entered into a contract of carriage governed by ATSF Circular Intermodal No. 1 (the "Circular") for the intermodal transportation by Defendant of Plaintiff's refrigerated trailer unit. Plaintiff's Response at 1. The agreement provided for transportation of frozen chickens owned by Plaintiff from Alliance, Texas, to Commerce, California. *Id.* Plaintiff contends that while its refrigerator trailer unit was in the possession and control of Defendant, the temperature increased significantly; as a result the chicken breast fillets in the

trailer were completely temperature damaged. The resulting damage to Plaintiff after salvage was allegedly $66,171.52. *Id.* at 2.

On September 29, 1994, Plaintiff presented a damage claim to Defendant for damage to the 1,512 cases of chicken breast fillets. *Id.;* Plaintiff's Exhibit 1. On October 18, 1994, Defendant issued a letter denying responsibility for the loss pursuant to a provision in the shipping contract which stated that ATSF will not service mechanical units. *See* Defendant's Exhibit A, attached to Reply.

Subsequent to Defendant's letter to Plaintiff, the parties had several telephone conversations regarding possible settlement of the instant claim and as well as settlement of an additional, unrelated claim. These discussions resulted in a stalemate on December 9, 1994. *See* Affidavit of Nelson Hayes at § 8. Plaintiff filed this complaint against Defendant on December 8, 1995 in state court, alleging breach of contract. Defendant removed the case to this District on December 29, 1995, on the basis of federal question jurisdiction, because the claim arises under a law of Congress regulating interstate commerce. *See* 28 U.S.C. § 1337.

Defendant moves for summary judgment alleging that it is entitled to judgment as a matter of law because the terms of the contract are governed by the ATSF Circular, which contains a provision requiring that all suits against ATSF must be commenced within one year after the date that ATSF declines any claim filed against it. Defendant contends that because it notified Plaintiff that it would not accept responsibility for its claim on October 18, 1994, Plaintiff's lawsuit must have been filed on or before October 18, 1995. Because Plaintiff filed its suit in December of 1995, Defendant argues that Plaintiff's claim is time-barred.

## II. ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

In proper circumstances, awarding summary judgment is not disfavored in the fed-

---

1. The Court finds Plaintiff's Objections to Powell's Affidavit to be without merit. Accordingly, the Court will not strike the portions objected to.

eral courts: "[summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive.]" *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir.1986).

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. Before a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the non-movant's case. *See Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The threshold inquiry, therefore, is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Of course, "the substantive law will identify which facts are material." *Id.* at 248, 106 S.Ct. at 2510.

The Supreme Court has explained that a movant for summary judgment need not support the motion with evidence negating the opponent's case; rather, once the movant establishes that there is an absence of evidence to support the non-movant's case, the burden is on the non-movant to make a showing sufficient to establish each element as to which that party will have the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

Once the burden shifts, the non-moving party must "come forward with 'specific facts

showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original) (*quoting* Rule 56(e)); *see also Fontenot*, 780 F.2d at 1195–98. A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355. Stated another way, "[i]f the record, taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir.1991) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356). In determining whether a genuine issue exists for trial, all of the evidence must be viewed in the light most favorable to the motion's opponent. *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir.1990). With these summary judgment standards in mind, the Court turns to an analysis of the summary judgment evidence.

## B. STATUTE OF LIMITATIONS

■ Plaintiff contends that the Court should apply a two-year statute of limitations to this action, and that the one year limitation in ATSF's circular is unenforceable. Plaintiff's Response at 4. The Carmack Amendment, 49 U.S.C. § 11707, governs the liability of common carriers under receipts and bills of lading.[2] While the Carmack Amendment states that a common carrier may not provide, by contract, a period of less than 2 years for bringing a civil action, this Act must be read in connection with 49 U.S.C. 10505(e), more commonly known as the Staggers Amendment.[3] Under the Staggers Amendment, as long as a rail carrier gives a shipper the option of shipping its goods pursuant to the terms of the Carmack Amendment, rail carriers and shippers may

---

**2.** The Act provides, in relevant part, as follows:

A carrier or freight forwarder may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years from bringing a civil action against it under this section.

49 U.S.C. § 11707(e).

**3.** The Staggers Amendment provides, in relevant part, as follows:

Nothing in this subsection or section 11707 of this title shall prevent rail carriers from offering alternative terms nor give the Commission the authority to require any specific level of rates or services based upon the provisions of section 11707 of this title.

49 U.S.C. § 10505(e).

contract to limit the rail carrier's liability. *See Bay State Shippers, Inc. v. The Atchison, Topeka and Santa Fe Railway Co.,* No. 95–5586, 1995 WL 865481 (C.D.Cal. filed November 30, 1995).

▉ As Plaintiff acknowledges, Item 52 of the parties' Circular contract provides that all suits against Defendant for loss and damage shall be commenced no later than one year after the date that Defendant declines any claim against the carrier. Plaintiff's Response at 4. The parties' contract further states that "liability for loss or damage to a lading consistent with 49 U.S.C. 11707 *is offered as an alternative* to the limited liability provided in Item 52." *See* Affidavit of Nelson Hayes at ¶ 11 (emphasis added). Plaintiff contends that the parties' contract should have assumed that limitations would be governed by the Carmack Amendment, rather than offering the terms of the Carmack Amendment as an alternative to one-year contractual limitations period. *See e.g.* Plaintiff's Response at 4 ("Plaintiff contends that the restrictive one year limitations period provided in the Circular is unenforceable because it was not offered as an alternative to the two year provision set forth in the Carmack Amendment.") Response at 4. Plaintiff's argument is unpersuasive, as is more fully discussed below.

In support of its argument that the limitations provision contained in the Carmack Amendment should control, Plaintiff relies on *Consolidated Rail Corp. v. Sobiech,* 710 F.Supp. 988 (S.D.N.Y.1989). In *Sobiech,* the court held that a rail carrier must provide shipping terms consistent with the Carmack Amendment before it provides alternative terms at the option of the shipper. 710 F.Supp. at 990 ("carriers may offer terms alternative to Carmack, which may be rejected by the shipper, but in any event, unless the shipper affirmatively elects the alternative limited liability terms, the Carmack terms should apply."). *Sobiech* represents the minority view and will not be relied upon by the Court. *See e.g. Bay State Shippers,* No. 95–3199 at 2 ("*Sobiech* is not convincing. . . . It is not surprising that no published opinion has ever cited to *Sobiech.* That court offered no rationale for its position, other than reliance on two cases, both of

which were later reversed . . .") Plaintiff acknowledges that other courts have reached opposite holdings to that of *Sobiech.* Plaintiff's Response at 5.

The Court is of the opinion that the order of the limitations options is irrelevant, as long as Plaintiff was given the opportunity to select the terms of the Carmack Amendment. It does not matter that the Carmack terms were offered to Plaintiff as an alternative to the contractual terms, without requiring Plaintiff to affirmatively elect the limited liability of Circular Item 52. *Accord Yamazen USA, Inc. v. Chicago & Northwestern Transportation Co.,* 790 F.2d 621, 623 (7th Cir. 1986); *Co-Operative Shippers, Inc. v. ATSF,* 840 F.2d 447, 452 (7th Cir.1988). Accordingly, the one-year limitations period contained in the parties' shipping contract applies to this lawsuit.

▉ Plaintiff contends, as an alternative argument, that Defendant's October 18, 1994 letter denying responsibility for Plaintiff's claim did not trigger the running of the limitations period. According to Plaintiff, because the Circular stated that all suits shall be commenced within one year after the date that ATSF "declines" any claim, ATSF's letter is insufficient because it does not use the magic word "declines" but instead states that Plaintiff's claim is "disallowed." Plaintiff's Response at 6–7. This is a distinction without a difference. The Court is unpersuaded by Plaintiff's reliance on semantics. Defendant's October 18, 1994 letter stated that Defendant "is not in a position to acknowledge any responsibility; therefore we must advise . . . that your claim is . . . disallowed." *See* Exhibit A, attached to Defendant's Reply. This language is clearly and unequivocally a denial of Plaintiff's claim.

▉ Finally, Plaintiff argues the one-year limitations period had not expired when Plaintiff filed this lawsuit on December 8, 1995. Plaintiff contends Defendant did not actually deny Plaintiff's claim until December 9, 1994, because settlement negotiations continued until that date. *See* Affidavit of Hayes at ¶¶ 8–9. Defendant contends that if settlement negotiations are continued after a claim is denied, such negotiations do not

operate to extend the time in which Plaintiff may file suit. Defendant's Reply at 4.

The Court may not consider evidence of settlement negotiations for the purpose advanced by Plaintiff. *See* Fed.R.Evid. 408; *Bilski v. C.I.R.*, 69 F.3d 64, 67 (5th Cir.1995) (No abuse of discretion by trial court in excluding letter regarding settlement negotiations); *Edward Valves v. Cameron Iron Works*, 286 F.2d 933 (5th Cir.1951), *cert. denied*, 368 U.S. 833, 82 S.Ct. 55, 7 L.Ed.2d 34 (1961) ("Acts performed and letters written during attempted settlement negotiations are usually inadmissible [because] [t]he law favors settlements.") Because the Court may only consider admissible evidence in the summary judgment context,[4] the settlement negotiations cannot be considered. Accordingly, the negotiations may not be relied upon by Plaintiff to defeat Defendant's Motion for Summary Judgment.

## III. CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED.**

This case is **DISMISSED** at Plaintiff's cost. Judgment will be entered accordingly.

SO ORDERED.

---

4. *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175–76 (5th Cir.1990) ("As a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial.") (Citations omitted).