126 F.3d 426
 DELAWARE AND HUDSON RAILWAY COMPANY, INC., Plaintiff-Appellant,
v.
OFFSET PAPERBACK MANUFACTURERS, INC., Horizon Paper Company,
Inc., Bantam Doubleday Dell Publishing Group, Inc., Berkley
Publishing Corporation, Harper Collins Publishers
Incorporated, Avon Book Sales Corporation, Defendants-Appellees.
 No. 1754, Docket 96-9388.
 United States Court of Appeals,
Second Circuit.
 Submitted and Argued June 10, 1997.
Decided Oct. 7, 1997.
 
 Terence M. Hynes, Washington, DC (Krista L. Edwards, Michael R. Fehner, Sidley & Austin), for Plaintiff-Appellant.
 Joseph Michael Roberts, Washington, DC (Grove, Jaskiewicz and Cobert), for Defendants-Appellees Offset Paperback Manufacturers, Inc., Bantam Doubleday Dell Publishing Group, Inc., Berkley Publishing Corporation, Harper Collins Publishers Incorporated, and Avon Book Sales Corporation.
 (Daniel G. Gurfein, New York City (David Leit, Satterlee Stephens Burke & Burke, LLP)), for Defendant-Appellee Horizon Paper Company, Inc.
 Before PARKER, Circuit Judge, and OAKES, Senior Circuit Judge, and NICKERSON, District Judge.*
 OAKES, Senior Circuit Judge:
 
 
 1
 Plaintiff-appellant Delaware and Hudson Railway Company, Inc. ("D & H"), a railway shipping company, seeks to collect demurrage fees for the late return of its railroad boxcars. The United States District Court for the Northern District of New York (Thomas J. McAvoy, Chief Judge ) dismissed D & H's complaint for lack of jurisdiction over the subject matter of the complaint. We conclude that, despite dramatic changes in the regulation of rail shipping, federal law in effect in 1995 allowed the enforcement of demurrage charges in federal court. We therefore reverse and remand.
 
 
 2
 D & H delivered shipments of paper to Defendants-Appellees, five book publishers and manufacturers (collectively "consignees"), between March 1993 and December 1995. D & H claims that the consignees failed to return its boxcars within the prescribed time period after delivery, and filed this lawsuit on March 25, 1996, to collect demurrage fees, or late charges, from the consignees.
 
 
 3
 D & H sought relief in federal court on the basis of federal question jurisdiction under 28 U.S.C. § 1331. The district court also considered 28 U.S.C. § 1337, and D & H asserts this latter basis for jurisdiction in its briefs on appeal. Section 1337 grants district courts "original jurisdiction of any civil action or proceeding under an Act of Congress regulating commerce...." The Interstate Commerce Act ("ICA") regulates commerce within the meaning of § 1337. See Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, 533-34, 103 S.Ct. 1343, 1343-44, 75 L.Ed.2d 260 (1983) (per curiam).
 
 
 4
 The consignees, claiming that a 1983 decision of the Interstate Commerce Commission ("ICC") exempted boxcar demurrage rates from regulation, sought dismissal of the claims for lack of subject matter jurisdiction. In a decision read from the bench, the district court agreed with the consignees. An order granting consignees' motion to dismiss was entered on September 19, 1996, and a judgment of dismissal was entered on September 26, 1996. This court has appellate jurisdiction under 28 U.S.C. § 1291.
 
 DISCUSSION
 
 5
 This appeal presents the single, narrow question whether, under law in effect as of December 1995, federal jurisdiction exists over an action to collect demurrage fees for the late return of railroad boxcars. For the reasons discussed below, we conclude that it does.
 
 
 6
 Demurrage fees historically have been established in published tariffs, subject to enforcement under the ICA and the "filed rate doctrine." See 49 U.S.C. §§ 10762 (creating the duty to file rates with the ICC) and 10761 (requiring that only the filed rates be charged) (1994) (repealed 1996). Under the filed rate doctrine, carriers may bring actions to enforce these filed rates in federal court because the tariffs have the force and effect of a federal statute. See Thurston Motor Lines, 460 U.S. at 534-35, 103 S.Ct. at 1343 (discussing Louisville & Nashville R. Co. v. Rice, 247 U.S. 201, 38 S.Ct. 429, 62 L.Ed. 1071 (1918)). The filed rate doctrine has been applied to demurrage rates. See Turner, Dennis & Lowry Lumber Co. v. Chicago, Milwaukee & St. Paul Ry. Co., 271 U.S. 259, 261, 46 S.Ct. 530, 531, 70 L.Ed. 934 (1926). At the time of the shipments at issue, D & H had filed a tariff containing its demurrage charges with the ICC.
 
 
 7
 This appeal arises against a background of dramatic changes in the federal government's regulation of railway transport. The Staggers Rail Act of 1980, Pub.L. No. 96-448, 94 Stat. 1895, exempted large parts of the railroad industry from regulation, and also authorized the ICC to undertake further deregulation. See 49 U.S.C. § 10505 (1994) (current version at 49 U.S.C.A. § 10502 (1997)). In 1983, the ICC exercised this power by exempting the transportation of boxcar commodities from maximum rate standards and tariff filing requirements. See Exemption from Regulation--Boxcar Traffic, 367 I.C.C. 425 (1983) ("Boxcar Traffic "). The D.C. Circuit later vacated Boxcar Traffic in part but upheld the portions of the decision that concern this appeal. Brae Corp. v. United States, 740 F.2d 1023 (D.C.Cir.1984).
 
 
 8
 The ICC was terminated on January 1, 1996, and replaced by the Surface Transportation Board. See ICC Termination Act of 1995, Pub.L. No. 104-88, 109 Stat. 803. The claims in this case, however, involve demurrage charges that accrued before January 1996. No party to this appeal has claimed that the ICC Termination Act retrospectively changed the parties' rights under prior law, and, absent a statement by Congress to the contrary, we see no reason that it should have. Accordingly, the law cited and discussed below is that in effect in 1995. We do not address any changes brought by the ICC Termination Act, as such questions are not relevant to this appeal.
 
 
 9
 The district court held that it lacked subject matter jurisdiction because the Boxcar Traffic decision and its implementing regulations had exempted demurrage rates from the ICC's jurisdiction and the mandatory filing requirement of the ICA. In the absence of federal regulation, the court held that demurrage fees no longer held the force and effect of a federal statute and therefore could not serve as the basis for federal jurisdiction. The court discussed two reasons for its conclusion. First, the court explained that "[t]he fact that plaintiff may have been required by [former 49 U.S.C. § 10750] to compute the demurrage charges and establish rules in accordance therewith simply does not establish [that] the filing of the tariff is required, nor that such tariff prescribe the duties and obligations of the parties to the shipment." Second, the court noted that a 1983 ICC regulation expressly mentioned several areas over which the ICC retained jurisdiction and demurrage was not one of them. See 49 C.F.R. § 1039.14(b) (1996). Both grounds for the district court's decision were incorrect.
 
 
 10
 First, the Boxcar Traffic decision did not disturb existing demurrage regulations. In Boxcar Traffic the ICC exempted transportation rates from regulation. The courts and the ICC have consistently recognized a distinction between transport, or freight rates, and demurrage rates. See, e.g., ICC v. Oregon Pac. Indus., Inc., 420 U.S. 184, 190 n. 7, 95 S.Ct. 909, 913 n. 7, 43 L.Ed.2d 121 (1975) (noting that demurrage charges are "not rates as that term is used in connection with [transportation] rate-making") (quoting Iversen v. United States, 63 F.Supp. 1001, 1005 (D.D.C.), aff'd per curiam, 327 U.S. 767, 66 S.Ct. 825, 90 L.Ed. 998 (1946)); Pennsylvania R.R. Co. v. Moore-McCormack Lines, Inc., 246 F.Supp. 143, 146 (S.D.N.Y.1965) ("Although demurrage rates are collectible together with the line haul freight charges, they are two separate items--each has a separate rate and serves a different purpose."), aff'd, 370 F.2d 430 (2d Cir.1966); Detention Charges on Coal From Oklahoma to Missouri, Via St. Louis-San Francisco Ry., 362 I.C.C. 700, 708 (1980) ("[D]emurrage charges have always been considered not as carrier rates or charges but as an integral part of rules and regulations relating to the improved use and movement of cars."). The exemption granted in Boxcar Traffic by its terms applies only to transportation rates. See Boxcar Traffic, 367 I.C.C. at 446 ("Taking the transportation of boxcar commodities as a class of service, and excluding only the carriage of nonferrous recyclable commodities, we find that continued rate regulation is not necessary....").
 
 
 11
 Indeed, the Boxcar Traffic decision expressly retained the ICC's jurisdiction over demurrage. The greater part of the Boxcar Traffic opinion is dedicated to a discussion of the ICC's reason for deregulating rail freight rates. Under the heading "Retention of Jurisdiction," the ICC explained: "[f]or clarification, we note that this decision ... does not affect the obligations of rail carriers to compute demurrage charges and establish rules related to those charges, as provided in 49 U.S.C. 10750." See Boxcar Traffic, 367 I.C.C. at 455.
 
 
 12
 Although the decision did not explicitly preserve the mandatory filing requirement of § 10762 with respect to demurrage rates, the absence of findings on this issue indicates that this obligation remained unchanged. The ICA required the ICC to exempt "a person, class of persons, or a transaction or service" from regulation only when the Board made findings that certain conditions were met. 49 U.S.C. § 10505(a) (1994) (current version at 49 U.S.C.A. § 10502(a) (1997)). Because the ICC made no such findings concerning demurrage charges, the proper implication is that it exempted only transportation rates and not demurrage rates from the filing requirement.
 
 
 13
 This interpretation is supported by the language of § 10762 itself. Section 10762(a)(1), as in effect in 1995, stated, "[a] carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission ... shall publish and file with the Commission tariffs containing the rates...." 49 U.S.C. § 10762(a)(1) (1994). Because the ICC did not specifically exempt demurrage charges from the filing requirement, and explicitly retained jurisdiction over at least some aspects of demurrage, demurrage charges comprised a "service" subject to the jurisdiction of the Interstate Commerce Commission. The filing requirement therefore applied, and, contrary to the district court's conclusion, D & H's filed tariff did "prescribe the duties and obligations of the parties to the shipment."
 
 
 14
 The district court also relied on 49 C.F.R. § 1039.14, a regulation first promulgated pursuant to Boxcar Traffic in 1983. The district court read the regulation as confirmation that demurrage was no longer regulated after Boxcar Traffic because demurrage was not listed as one of the six areas over which the ICC had retained jurisdiction. The district court's interpretation of this regulation, however, was based on a misunderstanding. The 1983 regulation provided:
 
 
 15
 (a) The Rail transportation of all commodities in boxcars is exempt from the provisions of 49 U.S.C. Subtitle IV except as otherwise provided in this section.
 
 
 16
 (b) The Commission retains jurisdiction in the following areas:
 
 
 17
 (1) Car hire and car service.
 
 
 18
 * * * * * *
 
 
 19
 (4) Car supply.
 
 
 20
 49 C.F.R. § 1039.14(b) (1996) (Boxcar transportation exemption and rules). While it is certainly true that demurrage is not mentioned, the terms "car supply" and "car service" are defined in the ICA as encompassing demurrage charges. See 49 U.S.C. §§ 10750 (demurrage charges must be computed to fulfill national needs related to "maintenance of an adequate supply of freight cars"), 10102(3) (defining "car service" to include, inter alia, the supply and return of boxcars) (1994) (current versions at 49 U.S.C.A. §§ 10746, 10102(2) (1997)). Thus, the regulation that the district court understood to confirm its view that demurrage had been deregulated in fact supports the contrary position that Boxcar Traffic did not change rail carriers' obligations under federal law with respect to demurrage.
 
 
 21
 In light of these clear statements of the ICC, we conclude that federal law, at least through 1995, required the publication, filing, and collection of demurrage charges. Accordingly, the district court erred by not exercising jurisdiction over D & H's complaint.
 
 
 22
 Consignees suggest that the district court's decision may be affirmed on the alternative basis that the contracts between D & H and its shippers (Canadian and U.S. paper mills) bar D & H from collecting demurrage fees from the consignees. This issue was not a basis of the district court's decision, and no findings exist in the record that would permit us to evaluate the merit of consignees' claim in this respect. Accordingly, we leave this question for the district court to address in the first instance.
 
 CONCLUSION
 
 23
 The decision of the district court is reversed and the case remanded for further proceedings.
 
 
 
 *
 The Honorable Eugene H. Nickerson, Senior District Judge of the United States District Court for the Eastern District of New York, sitting by designation