FERROSTAAL, INC., Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY, Defendant.

No. 99 Civ. 10497(AGS).

United States District Court, S.D. New York.

July 5, 2000.

Harold M. Kingsley, Kingsley & Kingsley, Hicksville, NY, for plaintiff.

Irene J. Feldman, New York, NY, for defendant.

### OPINION and ORDER

SCHWARTZ, District Judge.

Plaintiff Ferrostaal, Inc. filed this action on October 13, 1999, seeking damages for defendant's alleged failure to deliver a shipment of steel bars. Before the Court is defendant's motion for summary judg-ment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 56 and plaintiff's cross-motion for transfer of venue to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, defendant's motion is GRANT-ED and plaintiff's cross-motion is DE-NIED.

### BACKGROUND [1]

In June 1997, plaintiff sought to ship 26 bundles of steel bars from Laredo, Texas to Red Lion, Pennsylvania. (Def's. 56.1 Statement ¶ 6; Exh. 2 att. to Plaintiff's Attorney's Affirmation in Opposition to Motion for Summary Judgment, dated Mar. 22, 2000 ("Pl.'s Aff. Opp."); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl's. Mem. Law Opp.") at 1.) Plaintiff booked rail transportation with defendant Union Pacific Railroad Company. (Def's. 56.1 Statement ¶ 1.) Plaintiff designated the terms and conditions of the rail transportation and transmitted this shipping information to defendant. (Def's. 56.1 Statement ¶¶ 2, 4, 7.) Plaintiff's agent allegedly loaded defendant's railcar with the steel bars to be shipped and prepared a bill of lading dated June 18, 1997. (Pl.'s 56.1 Statement ¶ 1; Exhs. 1, 2 att. to Pl.'s Aff. Opp.; Pl's. Mem. Law Opp. at 1.)

On June 19, 1997, defendant invoiced plaintiff in the amount of $4224.64, a sum that plaintiff duly paid. (Exh. 3 att. to Pl.'s Aff. Opp.; Pl's. Mem. Law Opp. at 1.) For the "price authority", the invoice refers to "UP 000007", (Exh. 3 att. to Pl.'s Aff. Opp.), thereby allegedly referencing a document entitled UP Exempt Circular 7–E. (Def's. 56.1 Statement ¶¶ 5, 8; Affidavit of Brian D. Shaw in Support of Defendant Union Pacific Railroad Company's Motion for Summary Judgment, dated Mar. 7, 2000 ("Shaw Aff.") ¶ 11; Defendant's Re-

---

**1.** Except as otherwise indicated, the facts stated herein are undisputed. *Cf. Domino Media, Inc. v. Kranis,* 9 F.Supp.2d 374, 386 n. 1 (S.D.N.Y.1998) ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.") (citing Local Rule 56.1(c)).

ply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Def's. Reply") at 3.) UP Exempt Circular 7–E is also referenced by the waybill. The waybill references UP Exempt Circular 7–E under the heading "customer-furnished contract data". (Exh. A att. to Shaw Aff.)

UP Exempt Circular 7–E publishes defendant's interstate rail rates and terms for shipments of metals. (Def's. 56.1 Statement ¶ 9.) This Exempt Circular specifies that such rates and terms are "subject to the provisions" of a second Exempt Circular, UP Exempt Circular 4–D. (Def's. 56.1 Statement ¶ 11; Exh. C att. to Shaw Aff. at 2.) The version of UP Exempt Circular 4–D in effect at the relevant time provided:

> All lawsuits must be filed within *1 year* of receipt of written notice from Union Pacific Railroad rejecting a claim, either in full or in part.

*See* Union Pacific Railroad Company Exempt Circular 4–D, Item 142(4)(c) (effective Aug. 1, 1994) (Def's. 56.1 Statement ¶ 12 (emphasis added).)

The steel bars that plaintiff had shipped allegedly failed to arrive in Pennsylvania. (Pl's. Mem. Law Opp. at 1.) On September 29, 1997, plaintiff submitted a Freight Claim Presentation Form to defendant, asserting a claim for the loss of the shipment. (Def's. 56.1 Statement ¶ 13; Exh. 4 att. to Pl.'s Aff. Opp.; Pl's. Mem. Law Opp. at 1.) Defendant declined plaintiff's claim by letter dated October 15, 1997. (Def's. 56.1 Statement ¶ 14; Exh. D att. to Shaw Aff.)

Plaintiff filed suit on October 13, 1999, close to two years after receiving written notice that its claim had been rejected by defendant. (Def's. 56.1 Statement ¶¶ 14, 16, 17.) Plaintiff brings this action pursuant to 49 U.S.C. §§ 10101 *et seq.*, seeking damages with respect to the alleged nondelivery of the steel bars. Defendant filed the instant motion for summary judgment, which was fully submitted on March 29, 2000. Subsequently, plaintiff filed the instant cross-motion to transfer venue to the Southern District of Texas.

## DISCUSSION

## I. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard for Summary Judgment

A court may grant summary judgment under Fed.R.Civ.P. 56 only if it is satisfied that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Mitchell v. Washingtonville Central School District,* 190 F.3d 1, 5 (2d Cir.1999). The initial burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, and all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought. *See Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994) (citations omitted).

If this burden is met, the burden then shifts to the non-moving party to come forward with evidence to defeat the motion for summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The non-moving party must set forth "specific facts showing that there is a genuine issue for trial" and the evidence cannot consist of "mere allegations or denials of the adverse party's pleading." Fed.R.Civ.P. 56(e); *see also Delaware & Hudson Ry. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990) ("Conclusory allegations will not suffice to create a genuine issue.").

### B. There Is No Triable Issue of Fact With Respect to Whether This Action Is Time–Barred

Defendant contends that this action should be dismissed as time-barred and, accordingly, moves for summary judgment.

The length of the limitations period applicable to civil actions brought against rail carriers for goods lost during shipment is governed by the Carmack Amendment to the Interstate Commerce Act of 1887, 49 U.S.C. § 11706 (formerly 49 U.S.C. § 11707) ("Carmack Amendment"). *See Cleveland v. Beltman North American Co., Inc.*, 30 F.3d 373, 377 (2d Cir.1994) (stating that the scope of a common carrier's liability for goods lost during shipment is governed by Carmack Amendment); *Shao v. Link Cargo (Taiwan) Ltd.* 986 F.2d 700, 707 (4th Cir.1993) ("Actions brought by shippers against carriers for goods lost or damaged in interstate shipment are governed by the Carmack Amendment [ ]."). The Carmack Amendment provides, *inter alia*, that "[a] carrier or freight provider may not provide by rule, contract, or otherwise ... a period of less than 2 years for bringing a civil action against it under this section." 49 U.S.C. § 11706(e).

█ However, much of the railroad industry was deregulated with the enactment of the Staggers Rail Act of 1980, Pub.L. No. 96–448, 94 Stat. 1895, codified at 49 U.S.C. § 10502 (formerly 49 U.S.C. § 10505) ("section 10502"). *See Delaware and Hudson Ry. Co., Inc. v. Offset Paperback Mfrs., Inc.*, 126 F.3d 426, 428 (2d Cir.1997). Section 10502 provides, *inter alia*, that "[n]othing in ... section 11706 of this title [the Carmack Amendment] shall prevent rail carriers from offering alternative terms." 49 U.S.C. § 10502(e). Therefore, pursuant to section 10502 a carrier that offers the option of the two-year filing period set forth in' the Carmack Amendment may contract for a statute of limitations shorter than two years. *See Atlantic Mutual Companies v. Orient Overseas Container Line*, NO. C91–1097R, 1992 WL 226953 *2 (W.D.Wash. Mar. 26, 1992) ("[Section 10502(e) ] thus provides that so long as shippers have the option of a two-year filing period as set forth in the Carmack terms, carriers and shippers may bargain for a shorter period") (citing *Yamazen Inc. v. Chicago & Northwestern Transp. Co.*, 790 F.2d 621, 623 (7th Cir. 1986)); *see also C.R. England and Sons, Inc. v. Atchison, Topeka and Santa Fe Ry. Co.*, 924 F.Supp. 757, 759–60 (N.D.Tex. 1996) (holding that pursuant to § 10502 a rail carrier that offers a shipper the option of shipping its goods pursuant to the terms of the Carmack Amendment may contract for a one year statute of limitations).

█ Here, plaintiff does not dispute that it was offered the option of shipping its goods pursuant to the Carmack Amendment. Plaintiff also does not dispute that it was the one who designated the terms under which the shipment would be transported. As set forth in the shipment's waybill, the "customer-furnished contract data" is the UP 000007 series. (Exh. A att. to Shaw Aff.) That series includes UP Exempt Circular 7–E. (Exh. A att. to Shaw Aff.; Def's 56.1 Statement ¶¶ 5, 8; Def's. Reply at 6.) UP Exempt Circular 7–E by its terms renders applicable UP Exempt Circular 4–D, which provides that a civil action must be filed within *one year* of receipt of written notice from defendant rejecting a claim. (Def's. 56.1 Statement ¶¶ 11, 12; Exh. C att. to Shaw Aff. at 2; UP Exempt Circular 4–D, Item 142(4)(c) (effective Aug. 1, 1994).) Consequently, the waybill reflects that plaintiff had elected to make the one year limitations period set forth in UP Exempt Circular 4–D applicable to the shipment.

Further evidence that UP Exempt Circular 7–E and, concomitantly, UP Exempt Circular 4–D were rendered applicable to this shipment is contained in the invoice. (Exh. 3 att. to Pl's. Aff. Opp.) The invoice that defendant issued on June 19, 1997 expressly refers to UP Exempt Circular 7–E, as the "price authority". (Exh. 3 att. to Pl's. Aff. Opp.; Shaw Aff. ¶ 11; Def's. Reply at 3.)[2] Not only does the invoice ex-

**2.** The Court rejects plaintiff's contentions (i) that the copy of the waybill attached as Exhib-it A to the Shaw Affidavit does not refer to Exempt Circular 7–E, (Pl's. Mem. Law Opp.

pressly reference UP Exempt Circular 7–E for the rate quotation, it is undisputed that plaintiff duly remitted the fee that was calculated based on the rate in UP Exempt Circular 7–E. (Pl's. Mem. Law Opp. at 1.) Plaintiff's remittance of this fee is evidence that plaintiff had agreed that the shipment was to be subject to UP Exempt Circular 7–E and, *inter alia*, to the one year statute of limitations that UP Exempt Circular 7–E renders applicable.

Additional evidence that the one year limitations period is applicable stems from the variability of defendant's rates. In exchange for a shipper's agreement to limit the statute of limitations to one year, defendant charges a lower freight rate. It is this lower rate, which is the rate quoted by UP Exempt Circular 7–E, that was used to calculate the sum set forth in the invoice. (Def's. Mem. Law at 7, 11.) That the one year limitations period is applicable is supported by the fact that the fee for the rail transportation reflects the cheaper rate quotation. *See Yamazen,* 790 F.2d at 623 (finding that evidence that a one year limitations period was applicable lay in the fact that plaintiff had been charged the cheaper freight rate, reasoning that a cheaper rate is commonly quoted in exchange for a shipper's agreement to a limitations period shorter than the two year filing period provided by the Carmack Amendment); *Bay State Shippers, Inc. v. Atchison, Topeka and Santa Fe Ry. Co.,* No. CV 95–5586, 1995 WL 865481, *4 (C.D.Cal. Nov. 30, 1995) (same).

The Court concludes that, although defendant had offered plaintiff the option of applying the limitations period set forth in the Carmack Amendment, plaintiff affirmatively opted for the one year limitations period set forth in UP Exempt Circular 4–D and rendered applicable by UP Exempt Circular 7–E.[3] Therefore, here the applicable limitations period is not the two year period provided by the Carmack Amendment but the one year period set forth in UP Exempt Circular 4–D.

By the terms of UP Exempt Circular 4–D, the statute of limitations began to run when plaintiff received defendant's written notice rejecting the claim. (Def's. 56.1 Statement ¶¶ 11, 12; Exh. C att. to Shaw Aff. at 2; UP Exempt Circular 4–D, Item 142(4)(c) (effective Aug. 1, 1994).) It is undisputed that more than one year elapsed between October 1997, when plaintiff received written notice that defendant had rejected plaintiff's claim, and October 1999, when plaintiff filed this action. (Def's. 56.1 Statement ¶¶ 14, 16, 17.) Because the limitations period expired before plaintiff filed suit, this action must be dismissed as time-barred. *See C.R. England,* 924 F.Supp. at 760–61 (dismissing action against rail carrier where plaintiff had elected a one year limitations period and one year had elapsed between the date that defendant declined the claim and the date that plaintiff filed suit); *Atlantic Mutual,* 1992 WL 226953,*2 (same).

Plaintiff argues that there is a genuine issue of fact as to whether the one year statute of limitations set forth in UP Exempt Circular 4–D is applicable. Plaintiff reasons that (i) the terms of the document entitled UP Letter Quote 77422.000 ("Letter Quote") state that UP Exempt Circular

---

at 3; Pl's. 56.1 Statement ¶ 3); and (ii) that the invoice does not reference or reflect Exempt Circular 7–E, (Pl's. 56.1 Statement ¶ 3). Plaintiff offers no support for these contentions. Conclusory statements are inadequate to establish the existence of a triable issue of fact. *See Delaware & Hudson Ry.,* 902 F.2d at 178 ("Conclusory allegations will not suffice to create a genuine issue.").

**3.** Plaintiff, contending that it did not opt for the one year limitations period set forth in the Exempt Circulars, reasons that the *bill of*

*lading* for the steel shipment refers neither to UP Exempt Circular 7–E nor to UP Exempt Circular 4–D. However, the Court has found, *supra,* that shipping documents *other* than the bill of lading *do* refer to the Exempt Circulars. Additionally, it is undisputed that the fee paid by plaintiff for the rail transportation reflects the cheap rate in UP Exempt Circular 7–E ordinarily quoted in exchange for a shipper's agreement to limit the limitations period to one year.

4–D is applicable only where the shipping documents expressly reference the Letter Quote; and (ii) here, the shipping documents do not reference the Letter Quote. However, plaintiff has offered no evidence supporting the proposition that the Letter Quote governs this shipment.[4] Not only has plaintiff proffered *no* evidence supporting the applicability of the Letter Quote, the evidence discussed *supra does* support the applicability of UP Exempt Circular 7–E, which renders applicable the one year limitations period set forth in UP Exempt Circular 4–D. The Court finds that plaintiff has failed to establish the existence of a triable issue of fact with regard to the applicability of the one year statute of limitations set forth in UP Exempt Circular 4–D. Accordingly, the Court grants defendant's motion for summary judgment.

## II. MOTION FOR TRANSFER OF VENUE

■ Plaintiff cross-moves to transfer venue to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). Because the Court has dismissed the action by granting summary judgment, plaintiff's cross-motion to transfer venue is denied as moot. *Cf. Bay State Shippers,* 1995 WL 865481,*4.

■ Even were plaintiff's motion not rendered moot, plaintiff's motion would be still be denied. A motion to transfer venue "is not ordinarily granted at the request of the party who chose the forum in the first place". *See Tucker Anthony, Inc. v. Bankers Trust Co.,* No. 93 civ. 0257(SWK), 1994 WL 9683, *6 (S.D.N.Y. Jan. 10, 1994) (citation omitted). A plaintiff moving to transfer venue has already had an opportunity to choose the venue when filing the action. Therefore, a plaintiff moving to transfer must demonstrate, *inter alia,* that after the action was filed there was a change of circumstances that warrants transferring the action to the transferee forum. *See Crane v. Metro– North Commuter RR,* No. 87 Civ. 2876(MJL), 1989 WL 74954, *6 (S.D.N.Y. Jun. 26, 1989); *cf. Tucker,* 1994 WL 9683, *6; *Cremin v. Canadian Nat'l Ry. Co.,* No. 84 Civ. 8770(LLS), 1986 WL 4065, *3– 4 (S.D.N.Y. Apr. 3, 1986).

■ Here, the change in circumstances alleged by plaintiff is that plaintiff became apprised of two pieces of data: (i) the fact that the Letter Quote exists; and (ii) the fact that defendant had found the missing shipment and had auctioned it. Knowledge of the Letter Quote's existence is not a post-filing change of circumstances warranting transfer. First, the Letter Quote should have been known to plaintiff *prior* to filing. Plaintiff contends that the Letter Quote memorialized the terms that plaintiff had selected to govern the steel shipment. As such, the existence of the Letter Quote should have been known to plaintiff when the goods were shipped in June 1997, well before the October 13, 1999 filing date. Second, even were the Letter Quote unknown to plaintiff until the Letter Quote was produced by defendant in connection with this action, plaintiff explains neither why knowledge of the existence of the Letter Quote would have caused plaintiff to file suit initially in Tex-

---

4. Even were the Court to conclude that the Letter Quote does govern this shipment, a one year statute of limitations would still be applicable. The terms of the Letter Quote do *not,* as plaintiff argues, implicate a one year statute of limitations *only* where the shipping documents expressly refer to the Letter Quote. Instead, the terms of the Letter Quote merely implicate the one year statute of limitations *that is set forth in the Letter Quote* on such express reference. (Exh. 8 att. to Pl's. Aff. Opp.) Consequently, where the shipping documents do *not* expressly refer to the Letter Quote but *do* refer to a document whose terms render applicable a one year limitations period *independent* of the limitations period provided by the Letter Quote, a one year limitations period is implicated. Here, although the shipping documents fail to reference the Letter Quote, they do expressly refer to UP Exempt Circular 7–E, a document whose terms render applicable a one year limitations period *independent* of the one year limitations period provided by the Letter Quote. Accordingly, the limitations period is one year.

as, nor why the Letter Quote's existence now militates toward a Texas forum.

The second new datum of which plaintiff was allegedly belatedly apprised, the auction of the steel bars that had occurred in Texas, is likewise inadequate to warrant transfer. This action addresses defendant's liability for its alleged failure to deliver the steel bars. Plaintiff fails to explain why the auction is so integrally related to the substance of this action that the fact of the auction supports transfer to Texas. Evidence that the auction is, in fact, *incidental* to this action is that plaintiff has already filed a *separate* suit to address the matter of the auction. Plaintiff has failed to show a change in circumstances adequate to explain why transfer to Texas is warranted. Accordingly, even had plaintiff's motion to transfer not been rendered moot, the Court would deny plaintiff's motion.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED and plaintiff's cross-motion for transfer of venue is DENIED. The Clerk of the Court is directed to enter judgment for the defendant and to close the file in this action.

SO ORDERED.