**FIREMAN'S FUND MCGEE, Plaintiff,**

v.

**LANDSTAR RANGER,
INC., Defendant.**

**No. CIV.A.H–02–1940.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 10, 2003.

Eric J Simonson, McGlinchey Stafford, Adam C McNeil, McGlinchey Stafford PLLC, New Orleans, LA, for Fireman's Fund McGee, plaintiff.

Eric R Benton, Lorance & Thompson, Houston, for Landstar Ranger Inc, defendant.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

This cargo damage case is before the Court on Defendant Landstar Ranger, Inc.'s Motion for Summary Judgment ("Landstar's Motion") [Doc. # 18]. Plaintiff Fireman's Fund McGee ("Fireman's Fund") has filed its Opposition to Defendant Landstar Ranger, Inc.'s Motion for Summary Judgment [Doc. # 19], and Landstar has filed a Reply [Doc. # 20]. Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court concludes that Landstar's Motion should be granted.

## I. FACTUAL BACKGROUND

Plaintiff Fireman's Fund is subrogee for Empire Resources, Inc. Empire Resources imported fifty-five bundles of aluminum extrusions from Taishan, China. The cargo arrived in a shipping container at Southern Warehouse in Houston, Texas, on June 21, 2000. Southern Warehouse issued a bill of lading as agent of the shipper, Empire Resources, directing delivery of the cargo to Arrow Metals in Garland, Texas. Landstar is the carrier that delivered the goods to Arrow Metals for Empire Resources. The bill of lading specified that "material must be covered and dry at all times" and should be delivered on a "well tarped" flatbed trailer. *See* Exhibit 2 to Landstar's Motion.

The cargo was damaged by heavy rain when it was being loaded onto the flatbed trailer at the Southern Warehouse facility. The parties disagree as to whether it was a Landstar employee or a Southern Warehouse employee who loaded the cargo in the rain, but do not dispute that the cargo was undamaged when it arrived at Southern Warehouse. Landstar delivered the cargo to Arrow Metals in Garland, Texas on June 26, 2000 "soaking wet." *Id.* Arrow Metals accepted the damaged cargo subject to a claim for the damages. *Id.*

Fireman's Fund reimbursed Empire Resources $22,380.79 for its loss on its sale to Arrow Metals pursuant to an insurance

contract. Fireman's Fund, as subrogee for Empire Resources, filed a claim against Landstar on May 30, 2001. *See* Plaintiff's Opposition, Exhibit D. Landstar denied Fireman's Fund's claim because it was not filed within nine months of delivery as required by the Uniform Straight Bill of Lading provisions contained in the National Motor ᵀFreight Classifications, which Landstar contends governs the shipping contract. *See* Affidavit of Brenda J. Baker, Exhibit 1 to Landstar's Motion. Fireman's Fund filed this suit to recover funds it paid to Empire Resources for the damaged cargo.

The parties agree that the Southern Warehouse bill of lading is the contract that governs the relationship between the parties, Fireman's Fund as subrogee for Empire Resources, the shipper, Southern Warehouse, the custodian of the cargo who arranged for the cargo's transport, and Landstar, the carrier. The parties further agree that neither Empire Resources or Fireman's Fund submitted a claim for loss or damage to Landstar within nine months of the June 26, 2000 delivery. However, Fireman's Fund denies having notice of the nine-month claim filing limitation, and thus denies that its claim is time-barred. Landstar contends that Fireman's Fund's claim is time-barred, and thus it is entitled to summary judgment.

## II. *SUMMARY JUDGMENT STANDARDS*

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir.2002)

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002). An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 817 (5th Cir.2002). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir.1999).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998). The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Id.* If the movant meets this burden, the

nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir.2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995)). A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998)); *see also Quorum Health Resources, L.L.C. v. Maverick County Hosp. District*, 308 F.3d 451, 458 (5th Cir.2002).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Id.* Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995);

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

## III. ANALYSIS

### A. The Carmack Amendment

■ This case is governed by § 14706(e)(1) of Carmack Amendment, which authorizes shippers and carriers to contractually limit the deadline for shippers to report claims to carriers for cargo damage as long as the filing period is not less than nine months after delivery.[1] *See eg., Salzstein v. Bekins Van Lines Inc.*, 993 F.2d 1187, 1189 (5th Cir.1993). The Carmack Amendment and Surface Transportation Board Regulations, 49 C.F.R. §§ 1005.1–7 (2002), govern processing of claims for damage to property transported by common carriers. *Salzstein*, 993 F.2d at 1189; *Trailblazers Int'l Inc. v. Central Freight Lines*, 951 F.Supp. 121, 123 (S.D.Tex.1996). The shipper must meet minimum claim filing requirements, which include providing the carrier written notice within time limits specified in the bill of lading, asserting facts identifying the property, assessing liability for the loss and demanding a determinable amount of money. 49 C.F.R. § 1005.2(b) (2002).[2] Strict compliance with claim filing provisions is a

---

**1.** This provision states:

A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

49 U.S.C. § 14706(e)(1) (2000).

**2.** The regulation provides:

Minimum filing requirements. A written or electronic communication (when agreed to by the carrier and the shipper or receiver

involved) from a claimant, *filed with a proper carrier within the time limits specified in the bill of lading* or contract of carriage or transportation and: (1) Containing facts sufficient to identify the baggage of shipment (or shipments) of property, (2) asserting liability for the alleged loss, damage, injury, or delay, and (3) making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract for carriage: provided, however, that where claims are electronically handled, procedures are established to ensure reasonable carrier access to supporting documents.

"mandatory condition precedent to recovery on a claim." *Trailblazers,* 951 F.Supp. at 123 (applying *Salzstein,* 993 F.2d at 1190).[3]

### B. *The ICC Termination Act*

Prior to the ICC Termination Act[4], carriers filed tariffs with the ICC that established rates and set liability and notice limitations. *Tempel Steel Corp., v. Landstar Inway, Inc.,* 211 F.3d 1029, 1030 (7th Cir.2000). Shippers were deemed to have knowledge of the tariffs on file with the ICC, and parties could not contract around them. *Id.* Currently under 49 U.S.C. § 14706(c)(1)(B) (2000), "[if] the motor carrier is not required to file a tariff with the [Surface Transportation] Board, it shall provide ... to the shipper, on request of the shipper, a written or electronic copy of the rate classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier is based."[5] Therefore, shippers now are not automatically deemed to have knowledge of a carrier's tariffs, but the parties are free to agree to limit liability according to a carrier's tariffs, or standard contractual terms, if such are incorporated into the parties' contract, *i.e.,* a bill of lading.

### C. *Analysis: Terms of the Bill of Lading*

Landstar does not dispute Fireman's Fund's ability to make a *prima facie* showing on its claim, but contends that, even if Fireman's Fund's claim is otherwise valid, Fireman's Fund's untimely notice bars recovery. Fireman's Fund sent to Landstar on May 30, 2001, written notice of its claim for damage to the aluminum extrusions. It is undisputed that Fireman's Fund sent this notice more than nine months after the delivery date of June 26, 2000.

The dispositive issue is whether the parties agreed to a nine-month claim filing deadline in the bill of lading. Landstar argues that the nine-month notice limitation is incorporated into the bill of lading by the following language:

> ... it is mutually agreed ... that every service to be performed hereunder shall be subject to all of the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) in Uniform Freight Classification in effect on the date thereof [i]f this is a rail or rail-water shipment or (2) in the applicable motor carrier classification or tariff if this is a motor carrier shipment.

Landstar's Motion, Exhibit 2. Moreover, the bill of lading provides:

> Shipper hereby certifies that he is familiar with all of the terms and conditions of the said bill of lading, including those on the back thereof, set forth in the classification or tariff which governs the transportation of this shipment and the

---

49 C.F.R. § 1005.2(b) (2002) (emphasis added).

**3.** A *prima facie* case against a carrier for damage to a shipment may be shown by a bill of lading indicating delivery in good condition and then subsequent arrival in damaged condition with supporting documentation of the amount of damages. *See Accura Sys. Inc., v. Watkins Motor Lines, Inc.,* 98 F.3d 874, 877 (5th Cir.1996); *see also* 49 U.S.C. § 14706(a)(1) (2000) (imposing liability on carriers for loss or injury to the property.)

**4.** The ICC Termination Act abolished the Interstate Commerce Commission, and accordingly the mechanism for filing tariffs. ICC Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803 (1995).

**5.** Carriers required to file tariffs are designated by 49 U.S.C. § 13702(a)(1), (2) (2002) as those providing transportation or service that is in noncontiguous domestic trade or movement of household goods.

said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

*Id.* Landstar has submitted the uncontradicted affidavit of Brenda J. Baker, a cargo claims analyst with Landstar Risk Management Claim Services, Inc. Landstar's Motion, Exhibit 1. Baker's affidavit demonstrates that the bill of lading in issue in fact incorporates by reference the Uniform Straight Bill of Landing set forth in the National Motor Freight Classification 100–Z. *Id.* The Uniform Straight Bill of Lading includes a nine-month claim filing deadline. "Claims for loss or damage must be filed within nine months after the delivery of the property...." [6]

Fireman's Fund argues that it did not have notice of Landstar's limitation period for filing a damage claim because the bill of lading was not issued by Landstar and did not expressly incorporate Landstar's tariff. Fireman's Fund argues that because tariffs are no longer filed with the ICC, they are not legally binding unless a shipper has actual notice of the terms with which the carrier seeks to limit its liability. Fireman's Fund cites *Tempel Steel*, 211 F.3d at 1030, for the proposition that a bill of lading purporting to incorporate by reference "tariffs in effect" is insufficient to limit carrier's liability because the filed-rate system is no longer in effect and thus a carrier would not have actual notice of the limitation. A review of *Tempel Steel* belies this assertion. In *Tempel Steel*, the carrier sought to exclude its liability for a press machine damaged as it was trans-ported in Mexico. The carrier had a tariff in its own files maintaining an exclusion for any damage to a shipment sustained within the country of Mexico. The carrier drafted the bill of lading, which stated that the cargo was received "subject to the classifications and tariffs in effect on the date of issue." The bill of lading also contained a clause that made the tariff applicable "only in connection with tariffs making reference to the ICC number hereof." *Tempel Steel*, 211 F.3d at 1030. As a matter of basic contract interpretation, the court found that the absence of any reference to the ICC number in the bill of lading, the parties' contract, as required by that contract's own limiting clause, defeated the carrier's contention that the limitation had been incorporated into the contract. In sum, the carrier's bill of lading did not incorporate into that contract the tariff's exclusion from liability, and thus the limitation could not be enforced.

Although the ICC Termination Act abolished the rule that carriers' tariffs are automatically enforceable merely if on file with the ICC,[7] tariffs today (and in 2000–2001) are enforceable between shippers and carriers if the parties agree by contract.[8] If a shipper is unaware of the "rate, classifications, rules and practices ... agreed to between the shipper and carrier," the ***shipper*** has the burden to request a copy of the carrier's tariff.[9] Thus, under the ICC Termination Act and a correct reading of *Tempel Steel*, Landstar's position prevails.

█ The Southern Warehouse bill of lading states "[s]hipper hereby certifies

---

6. Exhibit B to Baker's Affidavit, at 5, § 3(b).

7. *See* 49 U.S.C. § 13710(a)(4) (2000).

8. "Today carriers adopt standard contractual terms, which some call 'tariffs' out of habit, but which have no effect apart from their status as contracts." *Tempel Steel Corp.*, 211 F.3d at 1030.

9. *See* 49 U.S.C. § 13710(a)(1) (2000); *See also EFS Nat'l Bank v. Averitt Express, Inc.*, 164 F.Supp.2d 994, 1002 (W.D.Tenn.2001) (holding bill of lading which incorporates by reference carrier's tariff is effective to limit liability).

that he is familiar with all of the terms and conditions ... set forth in the classification or tariff which governs the transportation of this shipment." Landstar's Motion, Exhibit 2. This clause clearly places responsibility with the shipper to familiarize itself with the terms of the tariff that governs the shipment. Landstar was the carrier that transported the cargo at the pertinent time. Thus, its tariffs apply under the contract.

Fireman's Fund parries with the argument that neither Landstar's tariff or the National Motor Freight Classification govern the shipment because Landstar did not draft the bill of lading.[10] Fireman's Fund has no legal or factual support for this contention. The bill of lading does not identify who will do the transportation. However, because the bill of lading covered the shipment through to Empire Resources' designated recipient, and Southern Warehouse, the drafter of the contract, designated Landstar as the carrier, the tariffs governing Landstar's business were incorporated by reference into the bill of lading.

Fireman's Fund therefore has not contradicted Landstar's evidence (submitted through the Affidavit of Brenda Baker) that the Uniform Straight Bill of Lading set forth in the National Motor Freight Classification 100–Z applies to this shipment, and that such Uniform Bill of Lading contains a term requiring the shipper to give notice of claim within nine months of the date of delivery. Fireman's Fund presents nothing that raises a genuine and material fact issue as to whether the nine-month notice period applies to its claim. Accordingly, Fireman's Fund has failed to meet its burden to demonstrate its claim is not time-barred.

## IV.  CONCLUSION AND ORDER

Landstar has met its summary judgment burden to show that the Southern Warehouse bill of lading incorporates by reference the terms and conditions of the Uniform Straight Bill of Lading set forth in the National Motor Freight Classification, which terms include the requirement that a notice of claim be filed within nine months after delivery of damaged cargo. Fireman's Fund did not provide notice within this period. Thus, there is no genuine issue of material fact the Fireman's Funds' claim for $22,380.79 for damages to the aluminum extrusions asserted in or about June 2000 is time-barred. Landstar is entitled to judgment as a matter of law dismissing Fireman's Funds' claim. It is therefore

**ORDERED** that Landstar's Motion for Summary Judgment [Doc. #18] is **GRANTED**. It is further

**ORDERED** that Fireman's Fund's claims will be dismissed in their entirety.

The Court will issue a separate final judgment.

---

10. The fact that the bill of lading was not prepared by Landstar actually weighs against Fireman's Fund's position. Southern Warehouse prepared the bill of lading as agent for Empire Resources, in whose shoes Fireman's Fund stands. Thus, any ambiguity in the bill of lading should be construed against Fireman's Fund. *Cf. Giacona v. Marubeni Oceano Corp.*, 623 F.Supp. 1560, 1569 (S.D.Tex.1985) (holding "a tariff should be construed strictly against the drafter of the tariff, as a corollary to the rule that written instruments will be construed strictly against their drafters."). Tellingly, Fireman's Fund does not state what tariff or classification, if not Landstar's, governs the shipment. Because Empire Resource's agent drafted the bill of lading, Fireman's Fund, as Empire Resource's subrogee, is in a unique position to know which tariffs and classifications apply and whether or not they contain a nine-month notice provision.