**GULF RICE ARKANSAS, LLC, Plaintiff,**

v.

**UNION PACIFIC RAILROAD COMPANY and A.G. Forwarding Corporation, Defendants.**

No. CIV.A. H–03–1281.

United States District Court, S.D. Texas, Houston Division.

March 24, 2005.

716

Jeffrey L Doggett, Tim Steven Leonard, Kirklin Boudreaux et al., Houston, TX, for Gulf Rice Arkansas LLC, Plaintiff.

Paul W. Nimmons, Jr., Attorney at Law, Houston, TX, A G Forwarding Corporation, Cecilia Torres, Pro Se, Philip T. Cowen, Attorney at Law, Brownsville, TX, for Union Pacific Railroad Company, A G Forwarding Corporation, Defendants.

## MEMORANDUM AND ORDER

HARMON, District Judge.

Pending before the court is the Motion of Defendant Union Pacific Railroad Company ("Union Pacific") for Summary Judgment (Docket Instrument No. 21–1) and to Sever (21–2), as well as Plaintiff, Gulf Rice Arkansas, LLC's ("Gulf Rice") Motion to Strike the Affidavit of Terry Sheldon. (Doc. 31.) Gulf Rice filed the instant action on April 14, 2003, in the 127th Judicial District Court of Harris County, Texas; the action was subsequently removed by Union Pacific pursuant to 28 U.S.C. § 1337 and 49 U.S.C. § 11706.

## I. Background

On or about Friday, March 23, 2001, Union Pacific was in the process of shipping railcars containing beans owned by Gulf Rice from Brownsville, Texas into Mexico. (Doc. 1, Plaintiff's Original Petition, p. 2, ¶ 5.) Union Pacific advised Gulf Rice that it would hold three of the six cars (RBOX 038468, CSXT 138038, and CSXT 135166) pending payment by Gulf Rice of outstanding demurrage charges. (Id.; Doc. 21, Affidavit of Terry Sheldon, p. 1.) Over that weekend, Gulf Rice sent a check for $38,100.00 to Union Pacific, but was advised that an additional $9,900.00 was owed. (Id., Plaintiff's Original Petition, p. 3, ¶ 5.) Gulf Rice alleges, but Union Pacific denies, that on or about Monday, March 26, 2001, Gulf Rice orally directed Union Pacific three times *not* to ship the remaining three cars across the border into Mexico, and Gulf Rice believed such oral directives were to have effect as it alleges they were always followed on prior

occasions. (Id.) On Wednesday, March 28, 2001, Gulf Rice wire transferred the $9,900.00; however, it asserts that either on that day, or the following day, contrary to its specific verbal instructions, Union Pacific shipped the remaining cars into Mexico, where the cars and product were "either confiscated, lost or stolen." (Id.) Defendant A.G. Forwarding acted as the freight forwarder for the shipment into Mexico. (Id.) Gulf Rice brought causes of action against defendants for breach of contract, negligence, breach of bailment duty, common carrier liability, and conversion. (Id., Plaintiff's Original Petition, pp. 4–5, ¶ 6–10.)

## II. Legal Standard

### A. Summary Judgment

The movant seeking summary judgment must inform the court of the basis of his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn,* 780 F.2d 1190, 1194 (5th Cir.1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material; i.e., only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty*

*Lobby,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986). The movant need not negate the opposing party's claims nor produce evidence showing the absence of a genuine issue of fact, but may rely on the absence of evidence to support essential elements of the opposing party's claims. *Celotex,* 477 U.S. at 323–25, 106 S.Ct. 2548. However, "[o]n summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). If it is evident that the party seeking summary judgment against one who bears the proof burden has no access to evidence of disproof, and ample time has been allowed for discovery, he should be permitted to rely upon the complete absence of proof of an essential element. *Fontenot v. Upjohn,* 780 F.2d at 1195. If the moving party fails to meet its initial burden, the motion must be denied, regardless of the non-movant's response. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

If the movant meets his burden, the burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed.R.Civ.P. 56(c). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence, and specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256–257, 106 S.Ct. 2505. The non-movant may point to evidentiary documents already in the record that set out specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works,*

*Inc.,* 910 F.2d 167, 178 (5th Cir.1990). Furthermore, the non-movant does not likewise have to present its own evidence, but may point out genuine issues of fact extant in the summary judgment evidence produced by the movant, if any. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 198–200 (5th Cir.1988).

"The mere existence of a 'scintilla' of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Furthermore, when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *DeLuca v. Atlantic Refining, Co.,* 176 F.2d 421, 423 (2nd Cir.1949) (L.Hand, J.)), by "conclusory allegations," *Lujan v. Nat'l Wildlife Fed.,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), by "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir.1994). *Little,* 37 F.3d at 1075. The court does not, *"in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.* (citing *Lujan,* 497 U.S. at 888, 110 S.Ct. 3177) (resolving actual disputes of material facts in favor of nonmoving party "is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint.... It will not do to 'presume' the missing facts because without them the affidavits would not establish the injury that they generally allege"); *See also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.1992) (because nonmovant bore the burden of proof on the issue of "adequacy," movant was not re-

quired to show that warning was *not in adequate*, but can point to the absence of evidence.) Even if evidence exists in the record, the court is not required to search for it. Rather, the non-movant *must refer* to such evidence. *Skotak*, 953 F.2d at 915 & n. 7 (*emphasis added*).

Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir.1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992). The non-movant cannot discharge its burden by offering vague allegations and legal conclusions. *Lujan*, 497 U.S. at 889, 110 S.Ct. 3177.

### III. Analysis

#### A. Preemption

■ The liability of a carrier for damage to an interstate shipment is a matter of federal law controlled by federal statutes and decisions. *Missouri P.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). The Fifth Circuit Court of Appeals has recognized that Congress intended for the "Carmack Amendment" to the Interstate Commerce Act (presently found at 49 U.S.C. § 14706 and § 11706) "to provide the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier," and that the complete preemption doctrine applies in such cases. *Hoskins v. Bekins Van Lines, Inc.*, 343 F.3d 769, 772–78 (5th Cir.2003). Hence, Gulf Rice's claims arise only under federal law, and its causes of action for breach of contract, negligence, breach of bailment duties, and conversion are preempted. Furthermore, "even when the shipper and carrier have contracted for specific rates and conditions," it has been stated that "the Car-

mack Amendment still preempts all state and common law claims for breach of contract and negligence for goods damaged or lost by carriers." *M.R. Swanson, Inc. v. Burlington N. & S.F. Ry.*, CV F 99 5496 AWI SMS, 2001 WL 201378, at *2 n. 1, 2001 U.S. Dist. LEXIS 25463, at * n. 1 (E.D.Cal. Feb. 21, 2001) (citing *Hughes Aircraft Co. v. North Am. Van Lines, Inc.*, 970 F.2d 609, 611 (9th Cir.1992)).

■ While any state law claim for common carrier liability is barred, to the extent Gulf Rice's remaining cause of action for common carrier liability is re-characterized as falling under the Carmack Amendment to the Interstate Commerce Act upon removal to this court, it survives. To establish a *prima facie* case for loss or damage to goods arising from the interstate transportation of those goods by a common carrier, the shipper must demonstrate: (1) delivery of the goods in good condition, (2) receipt by the consignee of less goods or damaged goods, and (3) the amount of damages. *Hoskins*, 343 F.3d at 778 (citing *Accura Sys. Inc., v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 877 (5th Cir.1996)); *See also Fireman's Fund McGee v. Landstar Ranger*, 250 F.Supp.2d 684, 688 n. 3 (S.D.Tex.2003).

#### B. The Limitations Period for Bringing Suit

The summary judgment motion pending before the court deals with the limitations period for bringing suit. Union Pacific asserts, and Gulf Rice does not deny, that the movement of the goods in the instant action was initiated by KBC Trading as shipper pursuant to a transportation agreement between KBC Trading and Union Pacific. (Doc. 21, p. 2.) Union Pacific asserts, and Gulf Rice does not deny, that the "waybills" each list KBC Trading as the shipper, and Incomar Texas, Ltd. c/o A.G. Forwarding, as the consignee. (Doc.

21, Sheldon Aff., p. 1, and attached Exh.'s 1, 2 & 3.) Union Pacific asserts that KCB Trading, as shipper, used Union Pacific's computer to enter the information on each of the three waybills, and that "at the time KBC shipped the goods, it designated [in the waybills for each of the three railcars at issue] that they were being carried pursuant to Tariff UPCQ 79424, Item 00002." (Doc. 21, p. 2; Sheldon Aff., p. 2, and attached Exh's 1, 2 & 3.) Looking at the copy of the UPCQ contract provided by Union Pacific, the contract is stated to be "[s]ubject to the provisions of UP 4 Series." (*Id.*, Sheldon Aff., Exh. 4.) According to Union Pacific, this is a reference to Union Pacific's "Exempt Circular 4–D," which was effective from September 1, 2000, to December 31, 2000, the time frame within which all three railcars were shipped. (*Id.*, Sheldon Aff. p. 2, Exh. 5.) Item 144 of Exempt Circular 4–D provides a one-year limitation on the filing of lawsuits:

> All lawsuits must be filed within one (1) year of receipt of the first written notice from Union Pacific Railroad rejecting a claim, either in full or in part. Any rejection of a claim shall start the time period for filing a lawsuit, notwithstanding the fact that the rejection letter notifies the claimant of omissions in the claim and the necessary actions required to correct the deficiencies. (*Id.*, Sheldon Aff., p. 2, Exh. 5, 2nd Revised PAGE 41.B.)

Gulf Rice does not deny these assertions.

As discussed in *C.R. England and Sons, Inc. v. Atchison, Topeka and S.F. Ry. Co.*, the length of the limitations period applicable to civil actions brought against rail carriers for goods lost during shipment is governed by the Carmack Amendment to the Interstate Commerce Act of 1887 (49 U.S.C. 11706). 924 F.Supp. 757, 759 n. 2 (N.D.Tex.1996); *See Ferrostaal, Inc. v. Union Pacific Railroad Co.*, 109 F.Supp.2d 146, 149 (S.D.N.Y.2000). The Carmack Amendment provides under subsection 49 U.S.C. § 11706(e) that:

> A rail carrier may not provide by rule, contract, or otherwise, a period less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section.

While it may appear that this strictly limits the applicable statute of limitations period to two years for an action against a rail carrier, this must be read in conjunction with the Staggers Act of 1980, which deregulated the railroad industry and provides:

> Nothing in this subsection or section 11706 of this title shall prevent rail carriers from offering alternative terms nor give the Board the authority to require any specific level of rates or services based upon the provisions of section 11706 of this title. *C.R. England*, 924 F.Supp. at 759; *Ferrostaal*, 109 F.Supp.2d at 149 (citing 29 U.S.C. 49 § 10502(e)).

Rather, a "carrier that offers the *option* of the two-year filing period set forth in the Carmack Amendment may contract for a statute of limitations shorter than two years." *Ferrostaal*, 109 F.Supp.2d at 149 (emphasis added); *See also Atlantic Mut. Cos. v. Orient Overseas Container Line*, NO. C91–1097R, 1992 WL 226953, *2, 1992 U.S. Dist. LEXIS 13284, *5 (W.D.Wash. Mar.26, 1992) In *C.R. England*, the court found that as long as the shipper was offered the alternative option of Section 11707 (presently Section 11706) liability rates within the language contained in the circular, limiting rights of action to the one-year limitations period, that period was valid. 924 F.Supp. at 760. Gulf Rice does not deny Union Pacific's assertion that KBC Trading filled out the waybills for the shipment as shipper, thereby showing that it was aware of UPCQ 79424.002

(a "Tariff" or "contract of carriage" between KBC Trading and Union Pacific), and that UPCQ 79424.002 referenced Exempt Circular 4–D and the alternate Carmack terms which were available under that Circular, though not chosen. Therefore, it would appear that under *Ferrostaal*, summary judgment should be granted to Union Pacific and against Gulf Rice. 109 F.Supp.2d at 149.

█ Although the parties have not briefed the following issues concerning the choice of a level of liability, the court notes that some courts prescribe that a shipper must make a well informed choice with respect to liability, and that "released valuation limitations bind the shipper . . . only if the shipper has notice of the rate structure and is given a full and fair opportunity to obtain greater protection." *Tamini Transformatori S.R.L. v. Union Pacific Railroad*, 02 Civ. 129(AGS), 2003 WL 135722, *6, 2003 U.S. Dist. LEXIS 616, *19 (S.D.N.Y. Jan. 16, 2003) (citing *Co–Operative Shippers, Inc. v. Atchison, Topeka and Santa Fe Ry. Co.*, 840 F.2d 447, 451 (7th Cir.1988)). To prove that such a choice is valid, courts have required that a carrier prove a four part test:

> Before a carrier's attempt to limit its liability will be effective, the carrier must (1) maintain a tariff in compliance with the Interstate Commerce Commission; (2) give the shipper a reasonable opportunity to choose between two or more levels of liability; (3) obtain the shipper's agreement as to his choice of liability; and (4) issue a bill of lading prior to moving a shipment that reflects any such agreement. *The carrier has the burden of proving that it has complied with these requirements.* *Hughes Aircraft Co.*, 970 F.2d at 611–12 (emphasis added); *See also Rohner Gehrig Co., Inc., v. Tri–State Motor Transit*, 950 F.2d 1079, 1081 (5th Cir.1992); *M.R. Swanson, Inc.*, 2001 WL 201378, at *5, 2001 U.S. Dist. LEXIS 25463, at *15–16.

Carriers and shippers can agree to limit both liability or shorten the statute of limitations. *See M.R. Swanson*, 2001 WL 201378, at *3–4, 2001 U.S. Dist. LEXIS 25463, at *10; *See also Yamazen U.S.A., Inc. v. Chicago Northwestern Transp. Co.*, 790 F.2d 621, 623 (7th Cir.1986); *C.R. England & Sons, Inc.*, 924 F.Supp. at 759; *Bay State Shippers, Inc. v. Atchison, Topeka and Santa Fe R.R. Co.*, CV 95–5586–WMB, 1995 WL 865481, *1, 1995 U.S. Dist. LEXIS 20154, *2 (C.D.Cal. Nov. 28, 1995).

To the extent the four part analysis is applicable in the instant action, the court finds that summary judgment should still be granted to Union Pacific. It is important to note that the first requirement of the four part test has been modified, as the ICC Termination Act of 1995 (49 U.S.C. § 702) abolished the Interstate Commerce Commission, (and the mechanism for filing tariffs) and replaced that Commission with the Surface Transportation Board. *See M.R. Swanson* 2001 WL 201378, at *4 n. 2, 2001 U.S. Dist. LEXIS 25463, at *11 n. 2; *Fireman's Fund McGee*, 250 F.Supp.2d at 688 n. 4 (citing ICC Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803 (1995); *See also Consolidated Rail Corp. v. Canada Malting Co., Ltd.*, CIVIL ACTION NO. 98–5984, 2000 WL 151160, at *8, 2000 U.S. Dist. LEXIS 1273, *22–23 (E.D.Pa. Feb. 7, 2000) (citing 49 U.S.C. § 10709(d)(1) (1997)); *Baltimore and Ohio Chicago Terminal R.R. Co. v. Wisconsin Central Ltd.*, 154 F.3d 404, 410 (7th Cir. 1998) (finding that the current law also does not require agreements between carriers and shippers to be filed)).

To the extent that cases from the trucking/motor carrier context are applicable, the Fifth Circuit Court of Appeals has previously followed the general doctrine that when tariffs were correctly filed by the carrier with the ICC, and the shipper

accepted the Bill of Lading ("BOL"), the first part under the four-part test was met through constructive knowledge of the shipper who was expected to know the tariff. *Johnson v. Bekins Van Lines*, 808 F.Supp. 545, 548 (E.D.Tex.1992), *aff'd*, 995 F.2d 221 (5th Cir.1993). With the adoption of the new legislation and a potentially new first part of the test, as tariffs are no longer filed, as stated above in *Fireman's Fund McGee*, "the *shipper* has the burden to request a copy of the carrier's tariff." 250 F.Supp.2d at 689 (emphasis in original) (citing *EFS National Bank v. Averitt Express, Inc.*, 164 F.Supp.2d 994, 1002 (W.D.Tenn.2001) ("holding bill of lading which incorporates by reference carrier's tariff is effective to limit liability.")). Furthermore, when a carrier's limiting terms are incorporated into the governing contract between the parties, the shipper is deemed to have constructive knowledge of the terms. *Id.* at 688–690.

On motions for summary judgment involving the new first part of the test, several courts do no more than mention when there is no evidence that the plaintiff requested a copy of the terms. *See EFS National Bank*, 164 F.Supp.2d at 1002 ("EFS failed to request a copy of the tariff. The [BOL] is a sufficient written agreement by both parties allowing Averitt to limit its liability"); *Nieman Marcus v. Quast Transfer, Inc.*, No. 98 C 3122, 1999 WL 436589, *3 (N.D.Ill. June 21, 1999) ("Here, plaintiff did not request a copy of the tariff prior to the fire so defendant had no obligation to send plaintiff a copy"); *Jackson v. Brook Ledge, Inc.*, 991 F.Supp. 640, 646 (E.D.Ky.1997) ("the Court finds that because the shipper did not request a copy of the rate, classification, rules and practices... Brook Ledge was not required to supply the same.... Accordingly the Court finds that Brook Ledge has satisfied the new first prong of the test.")

With respect to the second and third parts of the test, in the instant action Union Pacific argues that it provided the option of Carmack terms, because when KBC Trading entered the shipping information on Union Pacific's computer, the waybills referenced UPCQ 79424.002, which document in turn made reference to Union Pacific's "Exempt Circular 4–D," the latter of which contained both the limitations on liability and the option for full Carmack Amendment protection. (Instrument No. 25, p. 2, ¶ 2.) In *Ferrostaal*, such a reference in a waybill was found sufficient to reflect that the shipper had elected the one-year statute of limitations; and, the court infers that this shows KBC Trading was both aware of, and had chosen, the terms under which the shipment moved. *See* 109 F.Supp.2d at 149.

Gulf Rice in its response to the motion for summary judgment attaches no affidavits which rebut the assertions made by Union Pacific in its motion, and makes no argument denying that KBC Trading acted as shipper in this transaction and entered Tariff UPCQ 79424.002 as "customer furnished contract data" on the waybills for the shipment at issue. Gulf Rice has recently stated in a supplemental motion (Doc. 31) that no evidence has been presented that KBC Trading's actions can bind it, but Gulf Rice has never submitted affidavits which would create a disputed issue of fact in this regard. Furthermore, Gulf Rice does not deny that Union Pacific issued such waybills, that the Exempt Circular 4–D was referenced in Tariff UPCQ 79424.002 (the latter "Tariff" which was in fact a "contract of carriage" between KBC Trading and Union Pacific), and Gulf Rice does not assert that KBC Trading as shipper, or that Gulf Rice itself, was not provided with the opportunity to choose the liability provisions of Exempt Circular 4–D, or that it was not offered the opportunity or option to seek liability or limitations

terms under the Carmack Amendment. (*See* Instrument No. 21, Exh's 1 –5; Instrument No. 23, Exh. A.) Rather, the waybills reflect that KBC Trading agreed as to the choice of liability for this shipment. When the shipper or shipper's agent prepares a BOL, its choices of liability should control, and any ambiguity should be construed against the shipper. *Fireman's Fund,* 250 F.Supp.2d at n. 10 (citing *Giacona v. Marubeni Oceano Corp.,* 623 F.Supp. 1560, 1569 (S.D.Tex.1985) (holding that "a tariff should be construed strictly against the drafter of the tariff, as a corollary to the rule that written instruments will be construed strictly against their drafters.")).

With respect to the fourth factor of the four part test, there seems to be no dispute that waybills were issued and completed prior to shipment, as "[t]he shipment of all three cars was initiated by KBC Trading by entering the shipping information directly into Union Pacific's computer." (Instrument No. 21, Sheldon Aff., p. 1.) Therefore, the one-year limitations period for bringing suit against Union Pacific applies to the instant action, and Union Pacific's summary judgment motion would be granted, to the extent that Gulf Rice's claim was properly rejected, and the one-year limitations period had indeed run at the time suit was brought.

Finally, Gulf Rice has moved to strike the affidavit of Terry Sheldon, arguing that it is not based on personal knowledge. (Doc. 31.) The court denies this Motion to Strike because Sheldon is the Manager of Customer Claims and Prevention of Union Pacific Railroad Co., and he states he is "familiar with the procedures involved in handling, loading, unloading, and transporting goods by rail." (Doc. 21, Sheldon Aff., p. 1.) This establishes the basis for his knowledge. Furthermore, Sheldon's affidavit sufficiently provides the indicia from which the court can determine that Car-mack terms were offered and refused; where on the submitted "waybills" KBC Trading is listed as the shipper; where KBC Trading would have designated Tariff UPCQ 79424; and, that Exempt Circular 4–D was referenced in Tariff UPCQ 79424.002. Gulf Rice does not attack these latter documents themselves. Based on the law discussed *supra* and the information provided by Sheldon in conjunction with the attached documents, summary judgment can be granted.

**C. Disallowance of the Claim**

■ Remaining to be decided is "what act" triggered the running of the statute of limitations. Union Pacific argues that after Gulf Rice's representative sent a letter notifying Union Pacific of the loss in November 2001, and that on December 5, 2001, Union Pacific notified plaintiff that it was disallowing the claim. (Doc. 21, p. 3, Sheldon Affid. Exh. 7.) Union Pacific's December letter requested additional information, to allow Union Pacific to "properly research the claim," but it also stated that "[u]ntil such time as your claim is fully supported, we must respectfully disallow the same." (*Id.*) Gulf Rice did not file suit until April 14, 2003. Nevertheless, Gulf Rice argues that this was not a proper denial, but a request for more information, and it requests that its claims were not properly rejected until Union Pacific's letter of January 13, 2003, wherein Union Pacific finally stated after further correspondence between the parties, "[s] a result, we have no choice other than to advise that this claim must respectfully remain disallowed." (Doc. 23, Exh. B.) Union Pacific responds that the disallowance of December 5, 2001 was an effective denial of Gulf Rice's claim.

The word "disallow," contained in Union Pacific's language from its letter of December 5, 2001, "we must respectfully dis-

allow your claim," has been found to be a "clear and unequivocal" denial of a plaintiff's claim. *C.R. England & Sons v. Atchison, T. & S.F. Ry.*, 924 F.Supp. 757 (N.D.Tex.1996). The court agrees with Union Pacific that the December letter's request for additional information did not modify the running of the statute of limitations. Union Pacific points to Item 144 of Circular 4–D, which states that

> any rejection of a claim shall start the period for filing a lawsuit, notwithstanding the fact that the rejection letter notifies the claimant of omissions in the claim and the necessary actions required to correct those deficiencies.

KBC Trading, acting as shipper, apparently agreed to these terms, and it is therefore bound by the them.

Accordingly, it is hereby

ORDERED that the Motion of Defendant Union Pacific Railroad Company for Summary Judgment (Docket Instrument No. 21–1) is GRANTED, but the accompanying Motion to Sever (Doc. 21–2) is DENIED as the court has been notified (Doc. 30) of Defendant A.G. Forwarding's re-emergence from bankruptcy; it is further

ORDERED that Gulf Rice Arkansas, LLC's Motion to Strike the Affidavit of Terry Sheldon (Doc. 31) is DENIED; it is further

ORDERED that Union Pacific Railroad Company is DISMISSED from the instant action, and its Partially Opposed Motion to Amend the Answer is MOOT.