BEAM, Circuit Judge.
 

 Joe Whatley, Trustee of the wrongful death claimants' trust (WD Trust), appeals the district court's order finding that his claim under the Carmack Amendment,
 
 49 U.S.C. § 11706
 
 , against Canadian Pacific Railway was untimely. We reverse and remand for further proceedings.
 

 I. BACKGROUND
 

 On June 29, 2013, a train carrying crude oil left New Town, North Dakota, destined for an oil refinery near Saint John, New Brunswick, in Canada. The bill of lading for the train's cargo designated Western Petroleum Company
 
 [1]
 
 (WFE) as the shipper, Irving Oil Ltd. as the consignee, and Canadian Pacific Railway (CP) as the carrier. (CP is the parent company of the other rail defendants, including Soo Line Railroad Company, and we will refer to the defendants collectively as CP). The bill of lading was drafted and issued by CP and accepted by WFE through an online process. The online form did not indicate or designate any particular tariffs, price lists or any limitations of liability by CP. Soo Line transported the train from New Town, North Dakota, to just over the Canadian border. From there, Canadian Pacific took the train to its rail yard outside of Montreal, Quebec, where it turned the train over to Montreal Maine & Atlantic Railway (MAR) Canada.
 

 Around midnight on July 5, 2013, MAR parked the train on the main tracks and left it unattended. At some point early in the morning of July 6, 2013, the unattended train began rolling downhill toward Lac-Mégantic, Quebec. As the runaway train entered Lac-Mégantic, sixty-three of the train's seventy-two tanker cars derailed, spilling crude oil and causing a series of massive explosions. The derailment and subsequent explosions killed approximately forty-seven people and destroyed nearly the entire town of Lac-Mégantic. Obviously, neither the tanker cars nor the cargo made it to the intended destination and Irving did not receive the shipment.
 

 On August 7, 2013, MAR filed for bankruptcy protection. On November 5, 2013, WFE sent a notice of damages related to the derailment to CP. This letter notified CP that it was making a claim under Canadian law, and expressly stated that it was not making a claim under the Carmack Amendment.
 
 See
 

 49 U.S.C. § 11706
 
 (codifying the exclusive remedy for the liability of rail carriers under receipts and bills of lading). This WFE letter further stated that a Carmack Amendment claim would be sent at a later date. On November 27, 2013, CP responded to WFE by denying the Canadian claim, and by noting that the Canadian claim was indeed not a
 claim pursuant to the Carmack Amendment. CP also stated in the November 27 denial that,
 

 even if [WFE] were to submit a proper
 
 Carmack Amendment
 
 claim, CP's liability, if any, could not exceed the value of the lading (crude oil) and would not encompass rail-car damage claims or indemnity against third-party tort or governmental environmental claims. Those matters unquestionably go beyond the value of the property that CP received for transportation.
 

 Appellant's App. at 1944.
 

 On April 4, 2014, WFE sent a notice of claim to CP under the Carmack Amendment for all damages arising out of the derailment, including any amounts that WFE might be liable for to injured parties or for environmental cleanup. CP sent a letter in response to WFE on April 24 acknowledging that the April 4 claim was proper notice for the Carmack Amendment claim, and that WFE's November 5 claim was under Canadian law, but ultimately disallowing the Carmack Amendment claim based upon WFE's alleged negligent conduct.
 
 [2]
 

 Irving sent CP a letter on April 16, 2015, notifying it of potential derailment claims under various laws, including the Carmack Amendment. CP did not respond to Irving's letter. In October 2015, a bankruptcy court in Maine confirmed the MAR bankruptcy plan, and the federal district court in Maine adopted this order. CP withdrew its objections to confirmation of the plan. As may be relevant, the bankruptcy plan tolled any and all applicable limitations periods.
 

 WFE and Irving settled its negligence claims against MAR's Chapter 11 Trustee and the Canadian insolvency monitor for $110 million U.S. dollars and $75 million in Canadian currency, respectively. The Trustee assigned Whatley, the Trustee of the WD Trust, the rights of both WFE and Irving to bring any possible claims against CP under the Carmack Amendment. Whatley brought claims pursuant to the Carmack Amendment in the District Court of North Dakota on behalf of WFE and Irving on April 12, 2016. CP filed an answer to the complaint in May 2016, and a motion for judgment on the pleadings or in the alternative, for summary judgment, in November 2016, seeking to dismiss the Carmack Amendment claims as untimely and for other reasons. In March 2017, the district court granted the motion. The court rejected Whatley's arguments that CP was barred by res judicata from denying the claims because it did not object when the bankruptcy Trustee was considering whether to assign the Carmack Amendment claims to the WD Trust. The court determined that it should consider WFE's and Irving's claims separately, and ruled that WFE's Carmack Amendment claim was untimely because suit was not filed within two years of the denial letter sent by CP on November 27, 2013. The court further held that while Irving had standing to pursue its claim, it was also untimely because it did not provide notice of the claim within nine months of the incident. The district court did not specify whether the ruling was on the pleadings or on summary judgment grounds. Whatley appeals.
 

 II. DISCUSSION
 

 A motion for judgment on the pleadings is reviewed de novo and should
 be granted only if the moving party has clearly demonstrated that no material issue of fact remains and the moving party is entitled to judgment as a matter of law.
 
 Elnashar v. U.S. Dep't of Justice
 
 ,
 
 446 F.3d 792
 
 , 794 (8th Cir. 2006). We construe the facts in the complaint as true, and all reasonable inferences are drawn in the plaintiff's favor.
 

 Id.
 

 When matters outside the pleadings are considered by the court, the motion shall be treated as one for summary judgment.
 
 McAuley v. Fed. Ins. Co.
 
 ,
 
 500 F.3d 784
 
 , 787 (8th Cir. 2007).
 

 The Carmack Amendment "imposes upon 'receiving rail carrier[s]' and 'delivering rail carrier[s]' liability for damage caused during the rail route under the bill of lading, regardless of which carrier caused the damage."
 
 Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.
 
 ,
 
 561 U.S. 89
 
 , 98,
 
 130 S.Ct. 2433
 
 ,
 
 177 L.Ed.2d 424
 
 (2010) (alterations in original) (quoting
 
 49 U.S.C. § 11706
 
 (a) ). Its purpose is to relieve cargo owners "of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods."
 
 Reider v. Thompson
 
 ,
 
 339 U.S. 113
 
 , 119,
 
 70 S.Ct. 499
 
 ,
 
 94 L.Ed. 698
 
 (1950). To help achieve this goal, the Carmack Amendment constrains carriers' ability to limit liability by contract.
 
 49 U.S.C. § 11706
 
 (c).
 

 As noted, a claim under the Carmack Amendment is the exclusive remedy to recover under a bill of lading. The statute sets forth the following language regarding when claims for recovery can be made:
 

 A rail carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it
 
 under this section
 
 and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.
 

 49 U.S.C. § 11706
 
 (e) (emphasis added). Thus, the statute sets forth the floor-the minimum period which a carrier must give the shipper to give notice of a claim under section 11706.
 
 See
 

 Louisiana & W. R.R. Co. v. Gardiner
 
 ,
 
 273 U.S. 280
 
 , 284,
 
 47 S.Ct. 386
 
 ,
 
 71 L.Ed. 644
 
 (1927) (noting that similar language from an earlier version of the Carmack Amendment was not "intended to operate as a statute of limitation" but rather was meant to "restrict[ ] the freedom of carriers to fix the period within which suit could be brought"). An appendix to the implementing regulation, 49 C.F.R. pt. 1035, on the other hand, appears to set forth a clear time limitation.
 
 See
 
 49 C.F.R. pt. 1035, App. B, § 2(b) (stating that when a carrier fails to deliver cargo, "[a]s a condition precedent to recovery, claims must be filed in writing with the [carrier] ... within nine months after a reasonable time for delivery has elapsed" and further specifying that a lawsuit must be filed "within two years and one day from the day" the carrier gave written notice denying the claim). The regulation states that rail carriers "are required to use straight bills of lading as prescribed in Appendix ... B." 49 C.F.R. pt. 1035.1(a).
 
 [3]
 
 The record
 in the instant matter contains a rather generic bill of lading but there is nothing specific in the bill of lading in this record about whether the parties agreed to the uniform language set forth in the regulation.
 

 Whatley pleaded a prima facie case under the Carmack Amendment by setting forth facts establishing: (a) that WFE delivered the cargo to CP in good order and condition; (b) that the cargo did not arrive; and (c) the amount of damages incurred.
 
 See
 

 Mo. Pac. R.R. Co. v. Elmore & Stahl
 
 ,
 
 377 U.S. 134
 
 , 138,
 
 84 S.Ct. 1142
 
 ,
 
 12 L.Ed.2d 194
 
 (1964) (listing elements of prima facie case under the Carmack Amendment). Thus, if the district court erred in finding the claim to be untimely, reversal is warranted at this stage of the proceedings-either judgment on the pleadings or summary judgment. Although Whatley has been assigned the right to bring claims for both entities, because WFE and Irving are somewhat differently situated, we discuss them separately.
 

 A. WFE
 

 As stated, it is unclear from the current record whether the parties agreed to the uniform language from the regulation appendix setting a nine-month time period for notice, and a two-year (and a day) time limit for filing suit from the date that the claim was denied. Because of the outcome of our WFE analysis, we will assume that those time limits did, indeed, apply to WFE in this case. Given that assumption, unless the November 2013 exchange of correspondence between WFE and CP can be construed as a claim and a denial under the Carmack Amendment, WFE's claim based upon the claim letter and denial in April 2014 make Whatley's April 2016 lawsuit timely in any event.
 

 Whatley alleges that the claims in the complaint were timely pursuant to the April 4, 2014, notice, the April 24, 2014, response and the filing of this April 12, 2016, suit in federal court. It is clear that WFE timely filed its notice of claim by sending its Carmack Amendment notice on April 4, 2014. The incident occurred on July 7, 2013. April 4 is less than nine months later. Thus, the essence of WFE's dispute centers on the effect of the November 27, 2013, denial issued by CP for WFE's Canadian claims. If, as CP asserts, the November denial was a blanket denial of all claims, including any possible future Carmack Amendment claims, the two-year "limitations" period bars Whatley's claim because it ran in November 2015. If, however, the November 2013 denial did not affect the future, as-yet-to-be-asserted Carmack Amendment claims, the suit was timely brought within two years of the CP denial in April 2014.
 

 CP alleges WFE's written notice in November 2013 started the two-year clock, and the fact that the November 5, 2013, letter from WFE specifically disclaims any reference to a Carmack Amendment claim does not matter because the notice of claim need not reference the Carmack Amendment; instead, CP asserts, any form of claim denial starts the limitations period, citing
 
 Adams Express Co. v. Croninger
 
 ,
 
 226 U.S. 491
 
 ,
 
 33 S.Ct. 148
 
 ,
 
 57 L.Ed. 314
 
 (1913) ;
 
 Gulf Rice Arkansas, LLC v. Union Pacific Railroad Co.
 
 ,
 
 376 F.Supp.2d 715
 
 (S.D. Tex. 2005) ;
 
 Zarnoski-McCathern v. Eagle Van Lines
 
 , No. 04-CV-0155,
 
 2005 WL 292439
 
 (N.D. Tex. Feb. 8, 2005) ; and
 
 Conagra, Inc. v. Burlington Northern, Inc.
 
 ,
 
 438 F.Supp. 1266
 
 , 1268 (D. Neb. 1977) ("Any written document which identifies the damaged shipment and indicates an intention to hold the carrier responsible is sufficient."), in support of its arguments.
 

 The two Texas district court cases are quite distinguishable as they involve shippers' attempts to bring state law claims against the carriers, and once the cases were removed to the Texas federal district courts, the courts appropriately found the state claims preempted by the Carmack Amendment.
 
 Gulf Rice Ark.
 
 ,
 
 376 F.Supp.2d at
 
 719 ;
 
 Eagle Van Lines
 
 ,
 
 2005 WL 292439
 
 , at *2. Moreover, the courts in these cases analyzed the specific language of the agreements entered into by the parties to assess timeliness, and therefore these cases do not support the assertion that any form of claim denial will start the running of a two-year limitations period as a matter of law.
 
 See
 

 Gulf Rice Ark.
 
 ,
 
 376 F.Supp.2d at
 
 724 ;
 
 Eagle Van Lines
 
 ,
 
 2005 WL 292439
 
 , at *3. And the
 
 Burlington Northern
 
 case cited by CP is not at all on point; in that case the issue was whether the Carmack Amendment notification needed to be a "[d]etailed documentation of the claim," rather than a simple notice.
 
 438 F.Supp. at 1268
 
 . It was not a situation where a claim other than one under the Carmack Amendment was initially alleged or a matter discussing the adequacy of a denial.
 

 Id.
 

 The
 
 Croninger
 
 case is one of the first few Supreme Court cases construing the Carmack Amendment, which was enacted in 1906 as an amendment to the Interstate Commerce Act (although the Amendment has been altered and recodified over the last century).
 
 See
 

 Kawasaki Kisen Kaisha
 
 ,
 
 561 U.S. at 96
 
 ,
 
 130 S.Ct. 2433
 
 . Among other things, Croninger addressed the shipper's limited recovery options when it elected a lower shipping rate in exchange for releasing its goods at the standard value of the goods.
 
 226 U.S. at 509
 
 ,
 
 33 S.Ct. 148
 
 . While
 
 Croninger
 
 does stand for the proposition that common law claims against carriers are preempted by the Carmack Amendment,
 

 id.
 

 at 510-11
 
 ,
 
 33 S.Ct. 148
 
 , nothing in
 
 Croninger
 
 suggests that a carrier can preemptively deny a Carmack Amendment claim before it has been asserted.
 

 Here we have the unusual situation where the first claim made was pursuant to Canadian law. According to the November letter, WFE was required by Canadian law to submit notice of this claim within four months of the occurrence. WFE's November 5 notice expressly denied that WFE was making its Carmack Amendment claim, and noted that it would do so at a later time. The statute itself defines a Carmack Amendment claim as one being brought "under this section."
 
 49 U.S.C. § 11706
 
 (e). Indeed, if WFE had failed to make its April 2014 claim, CP might be arguing that the November notice did not assert a Carmack Amendment claim.
 
 See,
 

 e.g.
 
 ,
 
 Am. Rock Salt Co., LLC v. Norfolk S. Corp.
 
 ,
 
 387 F.Supp.2d 197
 
 , 204 (W.D.N.Y. 2005) (holding that shipper who gave written notice that it
 
 would be
 
 filing a claim "at some unspecified later date" but did not do so within nine months, did not adequately preserve its Carmack Amendment claim). To be sure,
 
 American Rock Salt
 
 is a bit distinguishable because the "will be filing" notice contained no specifics about damages.
 

 Id.
 

 at 203
 
 . Here, by necessity and due to the operation of Canadian law, damages (in the amount of approximately $4.9 million) were mentioned in the November 2013 correspondence. But equally clear in WFE's November correspondence was the notation that WFE was not yet making its Carmack Amendment claim. When it ultimately gave its Carmack Amendment notice in April 2014, WFE asked for damages in the amount of $6,670,593.27 and also noted that other damages (for property and wrongful death) were yet to be determined. We think it would be unwise policy, and actually unfair in this unusually complicated multi-national case, to allow the carrier to start the two-year clock when the shipper
 had not yet broken the huddle. We certainly agree that a denial starts the clock; but according to the statute, the denial must be from a claim brought "under this section."
 
 49 U.S.C. § 11706
 
 (e). WFE's November claim was assuredly and explicitly not brought pursuant to
 
 49 U.S.C. § 11706
 
 . Accordingly we reverse the district court's grant of judgment on the pleadings (or summary judgment) as to Whatley's claim on behalf of WFE.
 

 B. Irving
 

 Whatley's Irving claim is more problematic because Irving first gave notice in April 2015. If, indeed, the time limitations presumed in the previous section applied to the bill of lading in this case, Whatley's claim on behalf of Irving could be time-barred. Whatley alleges that since Irving was not a party to the bill of lading, it was not bound by any possible nine-month period for bringing suit. And, Irving alleges it was not required to provide notice of a claim until it was able to calculate its damages with reasonable precision. Because many of the claims against Irving were not alleged until the MAR bankruptcy case took shape, and the bankruptcy plan was confirmed in October 2015, Irving argues that its claim, made in April 2015, was as timely as reasonably possible. Finally, it alleges that the bankruptcy plan tolled any applicable statutes of limitations, including ones that may apply to the Carmack Amendment claims. However, CP points out that Irving cannot both escape the timing rules (that CP alleges are in the bill of lading and tariffs) and reap the benefits of the damages provisions by way of the bill of lading through the Carmack Amendment.
 

 More persuasively, however, Whatley alleges that there is a genuine dispute over the very existence of contractual terms in the bill of lading providing for a nine-month notice period and a two-year suit limitation, precluding both dismissal on the pleadings or summary judgment as a matter of law. Whatley alleged in the pleadings that the bill of lading did not contain terms setting forth the nine-month notice and two-year period for bringing suit. And as previously noted, the specific language and/or the tariffs themselves do not appear to be in the record on appeal. This omission and factual dispute precludes judgment on the pleadings or summary judgment in favor of CP with regard to Irving's claims.
 
 See
 

 Shao v. Link Cargo (Taiwan) Ltd.
 
 ,
 
 986 F.2d 700
 
 , 707-08 (4th Cir. 1993) (holding that the record was insufficient to determine whether contractual time limits applied to bar the Carmack Amendment claim, and thus, remand was warranted); Tr. of Oral Decision,
 
 In re:
 

 Maine Montreal & Atlantic Ry., Ltd.
 
 , Adv. No. 13-01033 (Bankr. D. Me. June 22, 2018) (rejecting argument that the bill of lading governing the same train at issue in the instant dispute automatically incorporated the terms of the uniform bill of lading). Although WFE may have arguably conceded this point,
 
 see
 
 ante n.2, Irving has not. If on remand it becomes clear that the nine-month notice and two-year lawsuit limits contractually apply, then Irving's Carmack Amendment claim is untimely, unless Irving's tolling arguments, based upon MAR's bankruptcy action, are meritorious. As the district court did not address Irving's tolling arguments below, we leave it to the district court to discern the applicability of any tolling, if necessary.
 

 III. CONCLUSION
 

 Accordingly, we reverse and remand for proceedings consistent with this opinion.
 

 Western Petroleum is one of several related entities that we collectively refer to as the World Fuel Entities (WFE).
 

 In its November 2013 and April 2014 denial letters, CP references several different tariffs, including ones that allegedly incorporate the Uniform Straight Bill of Lading. Addendum at 21-24; 28-31. However, the actual tariffs or their contents are apparently not in the record. In a submission to a Canadian Minister of the Environment, WFE references a similar tariff which allegedly incorporates the Uniform Straight Bill of Lading. App. at 2246.
 

 However, we are perplexed by the fact that this regulation appendix language seems to mandate a nine-month notice and two-year lawsuit ceiling when the unambiguous statute sets a floor for these same time limits. This makes the regulation completely at odds with the statute; for instance, the regulation
 
 requires
 
 that notice of a claim be given
 
 within
 
 nine months, while the statute clearly states that a carrier may not provide a period of
 
 less
 
 than nine months for filing a claim. 49 C.F.R. pt. 1035, App. B, § 2(b);
 
 49 U.S.C. § 11706
 
 (e). However, the validity of this particular regulation has not been called into question in this case and we express no opinion on the subject.